## PETERS VS. MYERS.

VENDOR AND VENDEE *of land: Who liable for tax re-assessed after the conveyance, for a year preceding the sale.*

1. Land conveyed in 1861 with covenant against incumbrances, was subsequently sold for taxes of 1857, re-assessed in 1862 under an act of the legislature of that year, the original assessment being invalid. *Held*, that there was a breach of the covenant, the lien of the tax relating back to the time when the land was entered on the assessment roll, and the aggregate amount of taxes for the year 1857 determined.

2. Sec. 130, ch. 15, R. S., 1849 (which provides that where land is conveyed before the warrant for the collection of the taxes is issued, the grantee shall be liable for the tax assessed thereon), applies only to the taxes of the year in which such conveyance is made.

DIXON, C J., dissents as to the second point.

Peters vs. Myers.

APPEAL from the Circuit Court for *Rock* County.

This appeal was taken by the defendant from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Bates & Nicholas* and *J. B. Cassoday*, for the appellant, to the point that all the covenants in defendant's deed relate to the condition of the title and possession at the time when the deed was delivered, cited *Clark v. Swift*, 3 Met., 390; *Pillsbury v. Mitchell*, 5 Wis., 17; *Ellis v. Welch*, 6 Mass., 250; *Naglee v. Ingersoll*, 7 Pa. St., 205; Rawle on Cov., 181; *Frost v. Earnest*, 4 Whart., 86. 2. They argued that a tax assessed and levied in 1862 was not a lien or incumbrance on the land in 1861. Sec. 115, ch. 15, R. S. 1849 (sec. 160, ch. 18, R. S. 1858), declares that "all taxes assessed on any tract or parcel of land * * shall be a lien," etc.; but there was no valid assessment of any tax on this land from the year 1857 until 1862; there was therefore no lien until that time. 3. A tax is not a lien until the amount is fixed. To hold otherwise would lead to innumerable difficulties. 4. Even if the tax had been legally assessed in 1857, it would not be a lien until a demand was made of the person liable for the tax. Sec. 55, ch. 115, R. S. 1849; Blackw., 205–7, and 37–8; *Mayhew v. Davis*, 4 McLean, 213; *Thompson v. Gardner*, 10 Johns., 404; *Bott v. Pearley*, 11 Mass., 169; *Jackson v. Shepard*, 7 Cow., 88; *Striker v. Kelley*, 2 Denio, 329–31; 5. Counsel also relied on sec. 130, ch. 15, R. S. 1849 (sec. 177, ch. 18, R. S. 1859).

*Sloan & Patten*, for respondent. [No brief on file.]

COLE, J. This action was brought upon the covenants of a deed executed and delivered by the defendant to the plaintiff, bearing date January 12, 1861. The deed contained the covenant that, at the time of the delivery thereof, the defendant was well seized of the premises conveyed as of an indefeasible estate of inheritance in fee simple; that the

same was free and clear from all liens and incumbrances whatever; and that he would warrant and forever defend the premises in the quiet and peaceable possession and enjoyment of the plaintiff against all persons lawfully claiming the same.   The plaintiff went into possession of the premises under the deed about the day of the date thereof, and continued in possession until the 19th day of June, 1863, when he was dispossessed and evicted by the grantee of a tax deed made on that day by the clerk of the city of Janesville.   The premises were what was known as *farming lands* in the city of Janesville, and were sold in July, 1862, for state, county and city taxes for the year 1857, upon a re-assessment of the same taxes under the law of 1862 (Pr. Laws of 1862, chap. 48).   It appears that there was a tax assessed and levied upon the lands for and in the year 1857, which was unpaid; but it was levied under section 5, chap. 179, Pr Laws 1854, which permitted a different rate of taxation upon agricultural lands within the corporate limits of the city than was imposed upon other real estate therein.

It was admitted by the parties, on the trial of the cause, that prior to 1857, by an act of the legislature, it was provided that farming lands within the corporate limits of the city of Janesville should, for all purposes of taxation, be subject to a lesser rate of taxation on the valuation than other lands, and that the premises in question were re-assessed in 1857, in pursuance of said act, as farming lands, at a less per cent. on the valuation than platted lands.   Also that said act was adjudged by the supreme court to be invalid; and that the aforesaid tax, assessed under the same, was illegal.   It was also admitted that the premises in question were in fact farming lands in 1857, and have so remained to the present time.

It was further admitted that subsequent to the decision of the supreme court, holding said act of 1854 invalid, an act

was passed by the legislature authorizing and requiring a re-assessment of taxes on all farming lands within the city for the year 1857, and other years, by which such lands were to be charged with additional taxes, to make the taxes on the same in the aggregate equal on the valuation to the taxes on other real estate in the city; and that the tax deed was issued upon a sale of the lands for the taxes of 1857, levied under this re-assessment law, as above stated.

The question now is, Do these matters show a breach of the covenants of the deed? It is claimed that they do; and the breach relied on is, that when the deed was delivered, January 12th, 1861, the taxes for 1857 had not been paid, and, although not legally assessed at that time, yet, by the subsequent re-assessment in 1862, they became an actual burden upon the land, and must be treated as an incumbrance from the time the assessment roll for 1857 was completed. For it is said, when the land was properly assessed at that time and the aggregate amount of state, county and city taxes for the city of Janesville was determined and certified, that then the land became liable, in proportion to its value, to pay its just share of this aggregate amount; and that when the taxes for 1857 became legally adjusted or charged upon the land at a subsequent period, they should be referred to and date from the time the amount of taxes was determined and certified. See sections 46 to 51, chap. 15, R. S. 1849. And this would make the taxes an incumbrance upon the property at the time the deed was executed, and bring them within the covenants. My brethren think this view of the case is correct. I have had considerable doubt upon the matter, but I am not prepared to say that their view is unsound. Certainly their conclusion derives great support from the case of *Hutchins v. Moody*, 30 Vermont, 656; and same case in 34 Vermont, 433. That was an action of cov-

enant upon a deed executed on the 12th of May, 1853. The real estate was set in the grand list to its then owner. on the first of April preceding its conveyance. *The taxes were rated and assessed upon it against him after the conveyance.* And the court held that while there would be no breach of the covenant against incumbrances until such taxes became legally fixed upon the land, so as to be a definite burden upon it, which the grantee might remove by payment, yet that where the taxes thus became legally fixed upon the estate, the burden would properly be referred to, and date from, the time of the date of the list. It might well have been argued in that case, as it has been in this, that the covenants of the deed only related to the conditions of the title and possession as they existed when the deed was delivered; and that, as the tax was not rated and assessed upon the land until after the conveyance, such tax did not constitute a breach of the covenant against incumbrances. But the court, by the principle of relation, treat the tax as an incumbrance from the time of the date of the list. That case goes far to sustain this action, and to show that it is no extravagant extension of the covenant to say that the tax for 1857, although not properly assessed or charged upon the land until after the execution of the deed, yet was embraced by it. The law made all taxes assessed on any tract of land, and all costs, charges and interest thereon, a lien upon the land until paid. Sec. 115, chap. 15, R. S. 1849. And, as already remarked, owing to the invalid provision in the law of 1854, the taxes for 1857 were not properly assessed upon the land until after the passage of the re-assessment law of 1862; yet, when they were assessed under that law, they are referred to a period anterior to the deed, and are to be treated as an incumbrance from that time.

But it is said that section 130, chap. 15, R. S. 1849, conclusively settles the question, and shows that the tax in this

case was to be paid by the plaintiff. That section provides that as between the grantor and grantee of any land, when there is no express agreement as to which shall pay the taxes that may be assessed thereon before the conveyance, if such land is conveyed even with, or prior to, the date of the warrant authorizing the collection of the taxes, then the grantee shall pay the same; but if conveyed after that date, the grantor shall pay them. I think, however, that this section refers only to the taxes of the year the conveyance is executed, and was not intended to apply to a case like the one before us. It seems to me that this is the more natural and reasonable construction of the provision, rather than that it applies to all cases without exception.

*By the Court.*—The judgment of the circuit court is affirmed.

DIXON, C. J. I dissent upon the last point discussed in the foregoing opinion.