AUGUST TERM, 1879.  567

Flanders vs. The Town of Merrimack and another.

FLANDERS vs. THE TOWN OF MERRIMACK and another.

*February 7 — March 9, 1880.*

*(1) Validity and application of tax-law of 1878-9.  (2) Reference in existing statute to repealed statute.*

1. Ch. 334 of 1878, as amended by ch. 255 of 1879 (by which one who seeks by suit to avoid a tax for irregularities going to the groundwork thereof, can obtain that relief only upon payment of the tax justly chargeable against him, ascertained by a proper reässessment as there provided for), is valid; and it applies to suits commenced before but tried after its passage.
2. Where a statute still in force refers to one since repealed, the latter may be resorted to·for the purpose of construing the former; and, notwithstanding the repeal of section 1210 $a$, R. S. 1878, the words of section 1210 $b$, "any of the causes mentioned in sec. 1210 $a$," etc., are to be understood as if the enumeration of causes thus referred to were incorporated in sec. 1210 $b$.

APPEAL from the Circuit Court for *Monroe* County.

The action was commenced in January, 1878, to restrain the collection of certain taxes assessed against the plaintiff, in 1877, on his lands in the defendant town, and to set aside the assessment and tax levy for that year. The complaint contains averments of fact showing that irregularities going to the groundwork of the tax, and affecting all the taxable property in the town, were committed in making the assessment in question. The defendants answered, denying the material allegations of the complaint. The cause was tried in April, 1879, and resulted in a finding that the tax in controversy is void because of certain specified irregularities in making the assessment, and that the plaintiff is entitled to the relief demanded by him. The court thereupon made the following order:

" This action having been brought to a hearing and heard upon the issues joined herein, and the court having found and being of the opinion that, for reasons contained in the finding of fact filed herein, affecting the groundwork of the taxes

| 48 | 567 |
|---|---|
| 84 | 462 |
| 48 | 567 |
| 95 | 633 |
| 48 | 567 |
| 107 | 425 |
| 107 | 427 |
| 107 | 429 |
| 108 | 669 |
| 48 | 567 |
| 72 App | 522 |

mentioned in the pleadings herein, and affecting all the property of said town of Merrimack, said assessment of said town of Merrimack, and the tax proceedings based thereon, should be set aside; and, on motion of the attorney for said defendants, and after hearing the attorney for said plaintiff in opposition thereto, and it being admitted that more than nine-tenths of the taxes of said town, exclusive of the taxes on plaintiff's land, had been paid prior to the commencement of this action —

"Ordered, that all proceedings in this action be, and they hereby are, stayed until a reässessment of the property of said town of Merrimack can be made."

From this order the plaintiff appealed.

For the appellant, there was a brief by *Flanders & Bottum*, his attorneys, and one by *Hastings & Greene* and *Tracy & Bailey*, and oral argument by *J. G. Flanders*.

For the respondents, there were separate briefs by *G. Stevens*, their attorney, and *H. J. Huntington*, of counsel, and oral argument by *Mr. Stevens*.

LYON, J.   1. This court has held in numerous cases that "violations or evasions of duty imposed by law to secure a just and uniform rule of assessment, whether occurring by mistake in law or fraud in fact, which go to impair the general equality and uniformity of the assessment, and thereby to defeat the uniform rule of taxation, vitiate the whole assessment as the foundation of a valid tax." The cases which recognize and enforce this principle are collated in the opinion by the chief justice in *Marsh v. The Board of Supervisors of Clark County*, 42 Wis., 502, from which the above quotation is taken. It was also held in that case that, under then existing laws, the court could not require a plaintiff seeking to avoid an illegal tax to pay his just proportion of a valid tax as a condition of equitable relief, because it was impossible for the court to say what would be such just proportion.

Flanders vs. The Town of Merrimack and another.

The series of decisions on the assessment and taxation laws which culminated in *Marsh v. The Supervisors*, led to the bringing of numerous actions to avoid alleged illegal taxes levied in certain portions of the state, where the essential requirements of those laws had been habitually and most grossly disregarded and violated by the officers charged with their execution. This is doubtless one of those actions; for *Marsh v. The Supervisors* was decided in October, 1877, and this action was commenced January 5, 1878. The effects of the judgments in the cases above referred to were seriously to impede the collection of the public revenue, and greatly to embarrass many of the municipalities of the state in their financial affairs. This evil was foreseen, and we would gladly have avoided giving the judgments which produced it. But the imperative mandate of the constitution, " The rule of taxation shall be uniform," closed against us every avenue of escape. The legislature of 1878 attempted to remedy the evil, as far as it could be remedied by legislation. Hence the enactment of chapter 334 of that year. Section 5 of that chapter provides that in all actions thereafter tried upon issue joined in any of the courts of this state to set aside any assessment, tax or tax proceeding, if the court is of the opinion, after a hearing, that for some reason affecting the groundwork of the tax and affecting all the property in the municipality, the assessment, tax or tax proceeding should be set aside, it shall stay proceedings in the action until a reässessment of the taxable property in such municipality can be made by the proper authorities thereof. The section then provides that the assessor shall make such reässessment in the manner prescribed in the act, and that the clerk shall extend thereon the amount of taxes for the year in question. The section as revised (R. S., 386, sec. 1210 *b)* requires the reässessment to be submitted to and passed upon by the proper board of review. It further provided that the reässessment roll and taxes so extended thereon should be *conclusive* evidence of the

amount of tax justly chargeable against the plaintiff on the property concerning which the action was brought, or upon any other property in such roll concerning which any other similar action should be brought.

The act of 1878 was before us for consideration, and the validity of section 5 was directly involved, in the case of *Plumer v. The Supervisors of Marathon Co.*, 46 Wis., 163. After full consideration, aided by able arguments of counsel, the court held it competent for the legislature to provide for a reässessment, and a stay of proceedings in the action until the same should be made; and to provide further that, when regularly made, and the taxes for the proper year extended thereon, the plaintiff should be required, as a condition of relief, to pay the just amount of his taxes thus ascertained. The section was held invalid on the sole ground that it made the first reässessment *conclusive* evidence of the amount of taxes justly chargeable to the plaintiff. For reasons stated in the opinion, and also in the very late case of *Marshall v. Benson* (ante, p. 558), the whole act of 1878 was reviewed, and the views of the court in respect to its various provisions stated in the opinion. Many of those provisions were not involved in the case; but the construction and validity of section 5 were directly involved therein, and constituted the very point of the judgment.

The decision in *Plumer v. The Supervisors*, which was announced during the session of the legislature of 1879, was followed by the enactment of chapter 255 of that year, which amends chapter 334 of 1878, or rather section 1210 *b*, R. S., which stood as the revised section 5, so that the reässessment roll and taxes extended thereon are made *prima facie* evidence only of the amount of tax which the plaintiff ought to pay. This amendment removed the only impediment to the validity of the section which the court was able to find in the Plumer case. The amended act prescribes the procedure to contest the validity of the reässessment, and further provides as fol-

lows: "If such reässessment and tax roll shall be held by the court regular and valid, or if no objections thereto shall be filed by the plaintiff, the court shall make an order requiring the plaintiff to pay into court, for the use and benefit of the defendant, the amount which by such valid reässessment he justly ought to pay. If the amount of tax imposed upon the plaintiff's property by such valid reässessment shall equal or exceed the amount imposed thereon by the original assessment and tax roll, the plaintiff shall be adjudged to pay costs of such suit; otherwise the plaintiff, upon complying with the order of the court last aforesaid, shall be entitled to judgment, with costs."

The provisions of the amended act just quoted doubtless express the purpose sought to be accomplished by chapter 334 of 1878, although not expressed therein. That object was manifestly to ascertain, through the process of reässessment, the amount of the plaintiff's proportion of the whole tax for the year in question which equitably he ought to pay, to the end that the court might require him to pay it as a condition of relief.

Laws for the reässessment of property for taxation and for the relevying of taxes thereon, in cases where a former assessment and tax levy have been adjudged invalid, are not strangers to our statute books or jurisprudence. The judgments of this court in *Knowlton v. The Supervisors of Rock Co.*, 9 Wis., 410, announced in October, 1859, and in *Weeks v. Milwaukee*, 10 Wis., 212, announced in January, 1860, invalidated all taxes levied in many of the municipalities of the state for several preceding years. To remedy the disastrous consequences which would otherwise necessarily result to some of those municipalities, to save them from liability to a multitude of actions to avoid such invalid tax levies, and to enable them to collect the public revenues, without which their functions could not be performed, the legislature of 1860 enacted special laws authorizing Racine (chapters 31 and 49), Milwaukee

(chapter 301), and Watertown (chapter 333), to reässess the taxes levied therein for the years 1856 to 1859, inclusive, and to levy and collect so much thereof as remained uncollected. Some of these acts, perhaps all of them, provided for repayment of the surplus to those who had overpaid their taxes. A similar act was passed at a subsequent session for the relief of the city of Janesville (chapter 48, P. & L. Laws of 1862), covering the taxes levied for the years 1854 to 1858, inclusive. Other statutes of the same character applying to some of the same, and perhaps to other, municipalities may be found in the annual statutes. These enactments came under the scrutiny of this court in *Tallman v. Janesville*, 17 Wis., 71, and *Cross v. Milwaukee*, 19 Wis., 509, and were held to be valid laws; and in *Peters v. Myers*, 22 Wis., 602, it was held that the reässessed tax was a debt due and a lien upon the property reässessed from the time it should have been first assessed. See, also, *May v. Holdridge*, 23 Wis., 93; *Mills v. Charlton*, 29 Wis., 400; *Evans v. Sharp*, id., 564; *Dill v. Roberts*, 30 Wis., 178.

Although the act of 1878, ch. 334, as amended by chapter 255 of 1879, does not provide (as did the legislation of twenty years ago) for the actual adjustment of the taxes on a legal basis with each tax payer of the municipality, whether he had paid the taxes illegally assessed against him in the first instance or not, yet it is essentially a reässessment law. Because it does not so provide, many of the details which were necessary in the former laws are unnecessary in the act of 1878 as amended. The assessment of a tax is the process prescribed by law to ascertain the sum of money which the owner of taxable property ought to pay, on account of such property, towards the support of the government for a given time. If assessed by a uniform rule, and in substantial compliance with the requirements of law, the ascertained amount becomes a debt legally and equitably due from the person assessed to the government or municipality assessing the tax. If not so as-

sessed, the legislature may provide that the tax be reässessed on correct principles and in legal form.   When this is done, the payment of the reässessed tax becomes, in like manner, obligatory upon the person charged with it.

The method of enforcing payment of a tax when legally ·assessed, is entirely within the discretion of the legislature. It may be made a lien upon the property assessed for taxation, and the same may be sold and the tax paid out of the proceeds; or payment may be enforced by distress and sale of the property of the person taxed; or it may be collected by suit at law; or, as in the present case, it may be enforced by requiring the person charged with an illegal tax, who seeks relief in equity, to pay the amount legally chargeable to him as a condition of relief.   And it is possible that equity would not relieve against a tax assessed on correct principles in accordance with law, even though the statute prescribed no means to enforce payment.   The methods of enforcing payment of taxes are not necessarily within the uniform rule of the constitution, but, as just stated, are within the discretion of the legislature, and may be adapted to the exigencies of each particular class of cases.   The legislature has deemed the method prescribed by the amended act of .1878 adequate to enforce payment of the reässessed taxes; and it is not for us to say that such method is inadequate for that purpose.

Conceding that the broad and ample provisions of the above cited acts of 1860 and 1862, to enforce payment of reässessed taxes, are preferable, still we cannot say that the reässessment provided for in the act of 1878, as amended, is invalid for want of those provisions.   If the requirements of that act are complied with, there will be a valid reässessment and a valid tax, notwithstanding some more effectual means might have been devised to enforce payment of such tax.   The act of 1878, as amended, leaves it optional with the tax payers of the town of Merrimack to pay the taxes assessed against them in 1877, or to resist payment thereof.   It appears in the

order appealed from, that nine-tenths of them chose the former course and paid the tax now adjudged to have been illegally assessed. The findings of the court show that these have paid more than their just share of taxes. But they are not here contesting the validity of the tax. They have exercised their option, and must be content. What principle of equity or law will be violated if those who elect to contest the validity of the tax, and who ask a court of equity to restrain the collection thereof and set aside the tax proceedings, are required, as a condition of relief, to pay the amounts of taxes which are justly chargeable to them? Because the law of 1878, as amended, makes ample provision for reässessing the tax by a uniform rule in accordance with existing laws, and thus ascertaining the amount legally and equitably chargeable to the plaintiff, and because it is an inherent principle in equity jurisprudence that he who would have equity must do equity, we should be constrained to hold, as an original proposition, that the amended act of 1878 is a valid law.

The constitutional declaration that every person is entitled to a certain remedy in the law, and ought to obtain justice freely, without being obliged to purchase it, completely without denial, promptly without delay, conformably to the laws (Const., art. I., sec. 9), is invoked to overthrow the amended act of 1878. The remedy to which a party is entitled is frequently uncertain until made certain by the judgment of the court; litigation has always been attended with expense; delays have always occurred in the progress of law suits; and parties have often failed, through defect of proof or other causes, to get their just rights at the end of litigations. Notwithstanding the declaration in the constitution, doubtless these things will continue to happen; for there has not yet been developed sufficient wisdom on earth to establish a system of jurisprudence free from these hindrances to absolute justice; and the framers of the constitution never supposed that they could do so in a paragraph, and did not attempt it.

The declaration simply means that laws shall be enacted giving a certain remedy for all injuries or wrongs, and that the rights of every suitor shall be honestly and promptly adjudicated, and enforced in conformity with the laws. We find nothing in the act under consideration which contravenes that declaration.

We have made the foregoing observations upon the act, not because they are necessary to a decision of the question of its validity, but in deference to the very able argument on the subject submitted by Messrs. Hastings & Greene and Tracy & Bailey, who, although not of counsel in the cause, are of counsel in other causes involving the same question, and who have, by permission, kindly submitted to us an argument of the question. We rest our judgment that the act of 1878, as amended, is a valid law, upon the decision in *Plumer v. The Supervisors, supra;* and on the authority of that case we should so hold, even though we now doubted the correctness of that decision, which we do not. We leave this branch of the case with the single remark, that the reässessment is to be. made of the property which should have been assessed in the first instance, and upon the basis of the value of such property in the year that it should have been assessed, which in this case is the year 1877. This is obvious.

2. It is argued with great earnestness and ingenuity, that the amended act of 1878 is not applicable to this case, for the reason that the issue herein was joined before the act was passed, or at least before the enactment of the amendatory act of 1879, which gave it validity. Considering the manifest object of the legislation in question, made apparent by the circumstances existing when these acts were passed, and the evils which the legislature sought to remedy, as well as the language employed, we cannot doubt that the act is applicable to all of the specified cases tried after its passage, upon issues joined therein, without regard to the time when the actions were commenced or when the issues were joined. The lan-

guage of the law is, "in all actions hereafter tried upon issue joined," etc. To construe this language to mean "issue *hereafter* joined," would come very near being an interpolation, and would, we believe, do violence to the plain and obvious intention of the legislature. If the action is disposed of without issue, the law has no application to it; and if the plaintiff show himself entitled to relief, he must have it without condition. Otherwise, if issue shall have been joined. This, we think, is the plain, natural import of the language employed. We hold, therefore, that this case is ruled by the law in question.

3. A single question remains to be considered. Section 1210*b*, R. S., corresponds with section 5 of 1878. The former section refers to section 1210*a* in these words: "In all actions hereafter tried upon issue joined in any of the courts of this state, in which it shall be sought by either party to avoid or set aside, in whole or in part, any assessment, tax or tax proceeding, for any of the causes mentioned in section 1210*a* of these statutes," etc. The act of 1879 repeals section 1210*a*. One of the learned counsel argues (if we correctly understood his argument), that since its repeal no resort can be had to it to ascertain the scope of section 1210*b*. The point is not well taken. Although section 1210*a* is not a law and has no longer the form of a law, it was not annihilated by its repeal, and a reference to it in the following section is just as effectual as ever it was to determine the cases to which the latter section is applicable. That section has the same force and effect as it would have were the words, "on the ground that such assessment, tax or tax proceeding is for any reason invalid," etc., inserted therein, instead of the words "for any of the causes mentioned in section 1210*a* of these statutes."

*By the Court.* — The order of the circuit court is affirmed.