STATE EX REL. KASKIN, and another, Plaintiff-Appellants, v. BOARD OF REVIEW OF COUNTY OF KENOSHA, Defendant-Respondent.†

Court of Appeals

*No. 78–300. Submitted on briefs April 18, 1979.—*
*Decided June 11, 1979.*
(Also reported in 282 N.W.2d 620.)

† Petition to review denied.

For the appellant, a brief was submitted by *Godfrey, Neshek, Worth, Howarth & Leibsle, S.C.* of Elkhorn.

For the respondent, a brief was submitted by *Frank Volpintesta*, corporation counsel for Kenosha county.

Before Brown, P.J., Voss, J., and Robert W. Hansen, Reserve Judge.

HANSEN, J. The Wisconsin Legislature has authorized Wisconsin counties to replace local tax district assessors with a county assessor,[1] with such county tax assessor, in counties so electing, to have "the same authority, responsibility and status, privileges and obligations of the assessor he displaces."[2]

As to the procedure to be followed in setting up such county tax assessment system, the legislature provided:

In making the first assessment of any city, town or village the county assessor shall equalize the assessment of property within each taxation district. Thereafter, he shall revalue each year as many taxation districts under his jurisdiction within such county as his available staff will permit so as to bring and maintain each such taxation district at a full value assessment. He shall proceed with such work so as to complete the revaluation of all taxation districts under his jurisdiction within 4 years. Such revaluation shall be made according to the procedures and manuals established by the department of revenue for the use of assessors.[3]

Kenosha County became the first county in Wisconsin to replace local district tax assessors with a county tax assessor's office. As sec. 70.99 (9), Stats., mandated, the county assessor set out to revalue or reassess all taxation districts in the county within the prescribed four-year period. Thus, property in the Village of Silver Lake was viewed and assessed by the county assessor in 1974. Properties in the Town of Randall were viewed and assessed as to value in 1975. Appellants, residents of the

[1] Sec. 70.99 (1), Stats.
[2] Sec. 70.99 (6), Stats.
[3] Sec. 70.99 (9), Stats.

Village of Silver Lake and Town of Randall, raise no issue or challenge as to the propriety by the county assessor under the new county-wide assessment system. It is made clear by respondent county that it is planned that such revaluation of properties by the county assessor is to be repeated at four-year intervals, respondent's brief on appeal stating: "This approach was used in the first year in which county wide assessing began and will be repeated periodically in subsequent years."[4] Obviously, the respondent county sees such quadrennial full and complete revaluation as legislatively mandated, its brief stating: "The legislature obviously recognized that an entire county cannot be assessed each year in the manner suggested by the plaintiffs because it allowed four years for such a total and thorough county assessment in sec. 70.99(9)."[5] We see sec. 70.99(9) as setting four years as the period of time during which a county, electing to establish a county assessor's office, must complete its initial revaluation of tax assessments on a county-wide basis. Respondents see it as requiring a quadrennial revaluation of properties by "total and thorough" assessments every four years thereafter.

However, respondents also see the statute as permitting less than such "total and thorough" assessments annually between the quadrennial "total and thorough" assessments. The legislative authorization for such interim revaluations between quadrennial reassessments is located in the words of sec. 70.99(9)—"to bring and maintain each such taxation district at a full value assessment." So, having completed the initial county assessor's revaluations based on actual view inspections, the respondent county began levying percentage increases in assessments based solely on comparative property sales in the district involved. Thus, using the so-called per-

[4] Brief for Respondent at 16.
[5] *Id.* at 20.

centage approach, assessments on buildings in the Village of Silver Lake were increased by 6%, while in the Town of Randall assessments on land were increased 11% and assessments on buildings were increased by 5%. It is these interim revaluations, based on comparative sales only, to which appellants filed objections and challenge on this appeal. The basic contention of appellants is that annual interim revaluations based solely on arm's-length sales of comparable properties in a taxing district are not statutorily authorized, even though preceded and followed quadrennially by "total and thorough" reassessments. Respondent county contends they are.

Discussion of this narrow issue begins with repeating that respondent county is contending that revaluations based solely on sales elsewhere in a district are proper only as to annual revaluations of properties between quadrennial "total and thorough" reassessments. As respondent's brief on appeal states, "the percentage increase is simply an attempt by the assessing office to measure the market changes on the original assessment from year to year on a particular parcel in the years between more formal assessments."[6] In fact, respondent's brief on this appeal concedes: "If it were not for the fact that periodically there will be a detailed assessment as suggested by the plaintiffs, the plaintiffs might be correct in attacking the validity of the percentage method."[7] Our problem, on this review, is that we do not find any statutory authority for treating differently what is termed an annual or interim revaluation and what the county here terms a "total and thorough" assessment every four years. Under our present statutes, we see no way to make fish out of one and fowl out of the other. What is required as to the one appears to be required as to the other, and vice versa.

[6] *Id.* at 17–18.

[7] *Id.* at 20.

Our holding that an assessment of property by a county assessor must meet the same test or standard as one by a local district assessor rests upon two statutes. Sec. 70.32(1), Stats., provides:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.

██

It is true that sec. 70.99(9), Stats., provides, as to county-wide assessment, only that, "[s]uch revaluation shall be made according to the procedures and manuals established by the department of revenue for the use of assessors."[8] However, this statute must be read in conjunction with sec. 70.32(1), particularly because sec. 70.99(6) provides that county assessors are to have "the same authority, responsibility and status, privileges and obligations of the assessor he displaces." County assessors, like the local district assessors they displace, are to make assessments only "from actual view or from the best information that the assessor can practicably obtain."

██

The interim or annual revaluations or reassessments made by the county assessor and challenged by appellants were, it is conceded, not based on any actual view or on-site inspections. But that is not required. As our Wisconsin Supreme Court has held, interpreting a statute similar to sec. 70.32(1):

We cannot hold that the mere failure of the assessor to value the lands from actual view invalidated the assessment. He may have been well acquainted with the lands,

---

[8] Appellants and respondents here agree that the state department assessors' manual for the years involved contains no specific procedures for an assessor, county or local, to follow.

and assessed them in previous years from such actual view. . . .

. . . Prior knowledge or information may, under certain circumstances, honestly be regarded as reliable, and hence justify an assessment.[9]

However, where there is no actual view or on-site inspection used as the basis for the assessment, a county or local assessor must base his assessment or revaluation on "the best information that the assessor can practicably obtain."[10] The term "best information" has been defined by our state supreme court as follows:

The "best information" of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on the value of the property in order to determine its fair market value.[11]

In the case before us, appellants' properties were not sold during the years in which interim revaluations were made. The increases in assessed value were arrived at in the following manner: The properties within the tax district were classified as either residential, commercial, industrial or agricultural. All sales of property within each classification in each district were examined but only to determine if they were at arm's-length. The arm's-length sales prices were then compared to the current assessment of the properties sold, and a percentage by which the sales prices were greater or less than the assessed value was calculated. An average of these percentages was taken to give a general or overall

[9] *Boorman v. Juneau County,* 76 Wis. 550, 552–53, 45 N.W. 675, 676 (1890).

[10] Sec. 70.32(1), Stats.

[11] *State ex rel. Markarian v. City of Cudahy,* 45 Wis.2d 683, 686, 173 N.W.2d 627, 629 (1970).

increase over assessed value of property within each category in each district. Reassessment was based on a percentage modification of the previous year's assessment. The now narrowed issue before us is whether such blanket or district-wide use of comparative sales statistics constitutes "the best information that the assessor can practicably obtain" as mandated by sec. 70.32(1), Stats.

In setting forth its reasons for holding, in the absence of a sale of the property in question, the sale of "reasonably comparable" property provides the "best information" of market value, the Wisconsin Supreme Court in *Rosen v. City of Milwaukee,*[12] has described and limited the use of the comparable sales basis as follows:

Quite obviously, "reasonable comparability" depends upon the degree of similarity between the properties in question. Important considerations in determining whether particular property is sufficiently similar to the property being assessed to warrant reliance on its sale price as evidence of market value include its location, including the distance from the assessed property, its business or residential advantages or disadvantages, its improvements, size and use. It is also important to consider the conditions of sale, including its time in relation to the date of valuation and its general mode and character insofar as they tend to indicate an arm's-length transaction. (Footnotes omitted.)

In the situation before us for review, the county assessor did no more than separate all property sales in the tax district into categories of residential, commercial, industrial and agricultural and determine that sales in each category were at arm's-length. Is such separation into categories and determination of sales being at arm's-length sufficient to permit a reassessment based on comparative sales? We think not. The acceptance of scattered sales in an entire tax district, even when limited to

[12] 72 Wis.2d 653, 665, 242 N.W.2d 681, 686 (1976).

one of four categories, does not give the detailed or individualized approach to assessing property required by the *Rosen* holding. Here we have no individualized comparison of appellants' properties with the properties sold, as was the case in *Rosen*. Here we do not have an individualized "detailed description of each of the three parcels owned by the appellants," and the "describing of each of the comparables" between properties assessed and properties sold that led the supreme court to find in *Rosen* "an adequate basis for the comparisons made by the assessor."[13] Instead, we have scattered sales of residential properties in a tax district used as the sole basis for a district-wide percentage increase of all assessments of all residential properties in such district. That substitutes a blanket, sweeping, meat cleaver approach for the property-by-property consideration of "important considerations" as mandated by *Rosen*. We, therefore, hold that the district-wide or blanket sales system used by the county assessor is not authorized by statute or permitted by the supreme court decision in *Rosen*.

In *Rosen*, the state supreme court said: "The appellants' objections based upon the differences between the sale prices obtained for the comparable properties and the evaluations placed on their parcels must be considered in light of the manner in which the assessor's comparisons were made."[14] Giving such consideration to the case before us, we conclude that the factors considered by the county assessors—all arm's-length sales of residential properties in the district as justifying a percentage increase as to all assessments of all residential properties in the districts involved—did not constitute a reassessment based on the "best information that the assessor can practicably obtain" as required by sec. 70.32(1), Stats.

[13] *Id.* at 665–66, 242 N.W.2d at 686.
[14] *Id.* at 666, 242 N.W.2d at 686.

As to the annual revaluations or percentage increases attempted by the county assessors following the initial and here unchallenged assessments made by actual view and on-site inspections, we hold such increases to be invalid, not authorized or permitted by secs. 70.32(1) or 70.99(9), Stats.

Appellants contend that, if the attempted annual revaluations or reassessments based on sales of other residential properties in their tax districts are held to be invalid, there must be "a reassessment of the entire taxation district within which each of the appellants' real property is located."[15] Reliance is upon sec. 75.54(1), Stats., providing as follows:

In all actions in any court of this state, in which either party seeks to avoid or set aside in whole or in part any assessment, tax or tax proceedings or reassessment, if the court is of the opinion, after a hearing had, that, for any reason *affecting the groundwork of the tax* and all the property in any assessment district, said assessment, tax or tax proceeding should be set aside, the court shall immediately stay all proceedings in such action and in all other actions affecting the assessment, tax or tax proceeding in such district until a reassessment of the property therein can be made . . . . [Emphasis supplied.]

We do not agree with the appellants' contention. As the words emphasized above make clear, the mandated stay of proceedings and reassessment follow only where the defects in the assessment go to the groundwork of the tax and all the property in any assessment district.[16]

---

[15] Brief for Appellants at 13.

[16] *See Bradley v. Lincoln County,* 60 Wis. 71, 73, 18 N.W. 732, 733 (1884) citing *Hersey v. Board of Supervisors of Barron County,* 37 Wis. 75 (1875) and *Marsh v. Board of Supervisors of Clark County,* 42 Wis. 502 (1877). *See also Hixon v. Town of Eagle River,* 91 Wis. 649, 651–52, 65 N.W. 366, 367 (1895). In *Flanders v. Town of Merrimack,* 48 Wis. 567, 568, 4 N.W. 741, 742

In the case before us, the challenge of appellants was only to the attempted annual percentage increases assertedly based on comparative sales. The challenge did not go to the "groundwork" of the assessment, to-wit: the unchallenged initial assessments of all properties in each tax district in Kenosha County, which assessments were based on actual views and on-site inspections of each property in each tax district in the county. Thus, this decision strikes down as invalid only the percentage increases attempted, not the initial assessments made by the county assessor. Therefore, the assessments by actual view made by the county assessor in the Town of Randall by actual view in 1974 stand, here unchallenged and by this decision unaffected. Similarly, the assessments made by on-site inspections by the county assessor in the Village of Silver Lake in 1974 stand, also here unchallenged and also unaffected by this decision.

*By the Court.*—Judgment reversed and case remanded to the trial court with directions to enter judgment consistent with this opinion.

(1880), the court summarized prior holdings as to a predecessor statute of sec. 75.54, that only tax assessments "which go to impair the general equality and uniformity of the assessment, and thereby to defeat the uniform rule of taxation, vitiate the whole assessment as the foundation of a valid tax."