PENINSULAR POWER COMPANY, Respondent, vs. WISCON-
SIN TAX COMMISSION, Appellant.

*January 11—March 6, 1928.*

*Public utilities: Taxation: Of utility in more than one assessment
district: Evidence: Report of local assessor: Of income asses-
sor as to ratio of assessed to true value: Remedy of utility if
disproportionately assessed: Equalization by tax commission:
Jurisdiction of court.*

1. Although an assessment for tax purposes made by the local
   assessor pursuant to secs. 70.32 and 70.34, Stats., is *prima facie*
   correct, the report of the assessor of incomes, showing, under
   sec. 70.75, the relative assessed and true value of property in
   each assessment district, is, by virtue of sec. 327.10, making
   the certificate or affidavit of a public officer required by law
   touching an act performed by him in the course of his official
   duty presumptive evidence of the facts therein stated, *held* to
   constitute presumptive evidence of the relative assessed and
   true value of property in each assessment district.   p. 234.

2. Such reports of assessors of incomes appointed by the state tax
   commission, based upon their access to the public records, sup-
   plemented by an examination and test of the work of the
   assessors, and augmented by information of every other na-
   ture and description which they have been able to gather in
   their various contacts and associations with assessing officers
   and taxpayers throughout the district, are given great sanc-
   tity by the law of the state, and are to be exalted far above
   the assessment made by the local assessor, so that where there
   is a conflict the law accords to the finding of the income tax
   assessor a weight and dignity that far outweighs the assess-
   ment made by the local assessor.   pp. 237, 238.

3. Where the court had before it the valuation of the property of
   a public utility in each assessment district made by the tax
   commission under secs. 70.32 and 70.34, Stats., and the report
   of the income tax assessor under sec. 70.75, and the finding
   of the court was based on the report of the income tax asses-
   sor, such report constituted sufficient evidence to sustain the
   finding that the utility was taxed on a higher relative value
   than other property in the districts.   p. 238.

4. Where the complaint was confined wholly to the proposition
   that the property of a public utility was assessed relatively
   higher than other property in the assessment districts, thus
   requiring it to pay more than its just proportion of taxes,

the remedy was a reassessment under ch. 436 of the Laws of 1925, amending sec. 76.48, Stats. 1923; and the court did not have the power to order the tax commission to reduce the assessment of the utility to correspond to other assessments in the districts into which the utility extended.    pp. 239, 240.

5. Under ch. 436 of the Laws of· 1925, amending sec. 76.48, Stats. 1923, by adding a provision that the tax commission shall have power to equalize the assessments provided for in sec. 76.47 with the assessments of real and personal property in such assessment district, the trial court should have stayed the proceedings herein and directed the tax commission to proceed to equalize the assessment of plaintiff's property with other property in the town in which it was located.  p. 240.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Reversed.*

The *Peninsular Power Company* brought this action under sec. 76.50, Stats., against the *State Tax Commission* for a review of an assessment of its property made by the *Tax Commission* under sec. 76.48, Stats. From a judgment in favor of the plaintiff the defendant appealed.

The *Peninsular Power Company* is a public utility engaged in the business of generating, transforming, transmitting, and furnishing electric current for· light, heat and power. Its property is located in the towns of Commonwealth and Florence in Florence county and in the town of Niagara in Marinette county. Its property was assessed for the purposes of taxation in 1924 ·by the *Tax Commission* pursuant to sec. 76.48, Stats., and the *Tax Commission* certified to the towns named the proportion of the assessed valuation properly belonging to each. The complaint alleges that the property of the plaintiff was assessed at its true value, and that the other property in the said three towns was assessed at much less than its true value, the ratio of assessed to true value in the town of Commonwealth being 83.53 per cent., in the town of Florence 68.42 per cent., and in the town of Niagara 69.328 per cent.

Upon the trial the respective reports of the assessors of incomes for Florence and Marinette counties were intro-

duced in evidence, which reports showed the ratio of assessed to true value in the towns in question to be· as alleged in the complaint, and the trial court so found the fact to be.   Judgment was entered by the court requiring the *Tax Commission* to reduce and scale down the assessment against plaintiff's property from the assessment of true value as found and determined by said defendant to an amount represented by said ratios.   From that judgment defendant brings this appeal.

For the appellant there were briefs by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and oral argument by *Mr. Arnold.*

For the respondent there were briefs by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *Mr. Shaw.*

· OWEN, J.   Appellant contends that the record contains no competent evidence of the true value of the assessable property of the towns of Commonwealth, Florence, and Niagara other than that of the property of the plaintiff, and that, consequently, there was no competent evidence upon which the court could determine the ratio existing between the assessed value and the true value of the assessable property in said towns outside the property owned by the plaintiff.   The evidence in this behalf consisted of reports made by the assessors of incomes of the counties of Florence and Marinette.   Sec. 70.75, Stats., requires the assessor of incomes to make a report to the county board of each county within his assessment district showing in detail the work of local assessors in their several districts, the failure, if any, of such assessors or property owners to comply with the law, the relative assessed and true value of property in each local assessment district, and all such information and statistics as he may obtain which will be of assistance to the county board in determining the relative value of all taxable property in each town, city, and village in the county.   Such report shall be filed with the county clerk at least fifteen days

before the annual meeting of the county board.    Not less than six copies ·of such printed report, together with all statistics accompanying the same, shall be filed with the *State Tax Commission.*    By sec. 327.10, Stats., it is provided:

"When a public officer is required or authorized by law to make a certificate or affidavit touching an act performed by him or to a fact ascertained by him in the course of his official duty and to file or deposit it in a public office such certificate or affidavit when so filed or deposited shall be received as presumptive evidence of the facts therein stated unless its effect is declared by some special provision of law."

The report made by the income tax assessor pursuant to law is equivalent to his certificate.    The statute requires that the report shall show "the relative assessed and true value of property in each local assessment district."    This is a fact which the law requires shall be ascertained by him. It would seem to follow that by virtue of sec. 327.10 the report of the income tax assessor constitutes presumptive evidence of the "relative assessed and true value of property in each local assessment district."    However, it is also the law that the assessment made by the local assessor is *prima facie* correct.    *State ex rel. Miller v. Thompson,* 151 Wis. 184, 138 N. W. 628; *State ex rel. Kimberly-Clark Co. v. Williams,* 160 Wis. 648, 152 N. W. 450.    The court, therefore, had before it the valuation of property in each town made by the local assessor.    The law (sec. 70.32 and sec. 70.34) requires the assessor to value the assessable property of the town at its true cash value, and his valuation is *prima facie* correct.    The law requires the assessor of incomes to ascertain "the relative assessed and true value of property in each local assessment district," and his report thereon is presumptive evidence of the facts therein stated. Upon such a record, where is the weight of the evidence?

While the law requires local assessors to assess the property of their respective assessment districts at its true cash value, it has long been a matter of common knowledge that they do not do so. This practice has aggravated taxation evils, and in late years efforts have been made to encourage a more faithful observance of the law in this respect on the part of local assessors. Whether this was the controlling reason for the creation of the *Tax Commission*, it has always been regarded as an evil which it was a part of the duty of the *Tax Commission* to correct. Supervisory and reviewing powers in numerous respects over local assessments have been conferred upon the *Tax Commission*. It has been the continuous effort of that body not only by an exercise of its various powers of supervision and review over local assessments, but in its public reports and preachments, to promote more faithful assessments. The *Tax Commission* is the supreme administrative body of the state with reference to matters of assessment and taxation.

The assessors of incomes are appointed by the *State Tax Commission*. They are under the direction and control of the *State Tax Commission*, "and shall make such reports to the commission, to the county board of review and the county board of supervisors, and perform such other duties, as the commission shall direct." Sec. 71.07, Stats. By sec. 70.75 (2), Stats., it is provided that "The assessor of incomes shall have access to all public records, books, papers and offices throughout his district and shall make a full and complete examination of them and investigate all other matters and subjects relative to the assessment and taxation of property in the several towns, villages and cities contained therein; and for that purpose he shall visit each such town, village and city as often as may be necessary during each year." And by sub. (3) of said sec. 70.75 it is provided that "The assessor of incomes shall examine and test

the work of assessors during the progress of their assessments and ascertain whether any of them is assessing property at other than full value or is omitting property subject to taxation from the roll."

Many other provisions of the statutes might be cited to indicate that the assessor of incomes is superior to the local assessor and is accorded higher rank and dignity by the law. He is a sort of field man for the *Tax Commission*—an intermediary between the *Tax Commission* and the local assessing officers. His findings are presumed by the very scheme of the law to be more profound, more scientific, and more accurate than those of the local assessor. But it is said that his conclusions are not founded upon the same intimate knowledge which the assessor possesses with reference to each specific piece of property in his assessment district. It is true that the assessor is required to view the property which he assesses. It is also true that this is quite impracticable on the part of the assessor of incomes. It may be conceded also that if the assessor proceeded with the same fidelity to the requirements of the law that governs the assessor of incomes, his conclusions might be more accurate than those of the assessor of incomes. But the law really proceeds on the theory that the assessor may not be faithful to the mandate of the statute in assessing property at its full cash value, and the assessor of incomes is required to test the assessment of the various assessors in his district. How does he do this?

We find an explanation of the method followed in the testimony of Judge Rosa, a member of the *State Tax Commission,* in this case. The assessor of incomes takes note of the records to be found in the office of the register of deeds. These records inform him of the various sales of real estate made throughout the county. By taking note of the consideration mentioned in the deed, and by verifying such consideration, he ascertains the actual sale value of the land. He then compares the actual sales value with the

assessed value. By numerous like comparisons he is enabled to arrive at a conclusion as to whether the assessor of a given town is making a *bona fide* effort to assess the property of his town at its true value, and, if not, a fairly correct conclusion as to the ratio obtaining between the assessed and the true value of property in that town. It should be said that the information received in this manner by the assessor of incomes is supplemented by information of every other nature and description which he is enabled to gather in his various contacts and associations with the assessing officers and taxpayers throughout his district. The conclusions thus arrived at are given great sanctity by the law of this state. The methods followed are those employed by the *State Tax Commission* in assessing the property of the state pursuant to the express command of the legislature. The *Tax Commission* is required to assess the property of the various railway companies of the state. To that assessment the average rate of taxation prevailing throughout the state, based upon the true value of the assessable property in the state, is applied, and the tax is paid by the railway companies into the state treasury. It will be observed that in order to bring about an equality of taxation the rate must be determined by taking the true value rather than the assessed value of the assessable property of the state. In order to obtain that true value, sec. 76.09, Stats., provides that the *Commission,* "from the information obtained pursuant to section 70.57, and upon all the evidence, proofs, statistics and information obtainable from all available sources, shall according to their best knowledge and judgment, ascertain and determine the true cash value of all general property of the state liable to state, county and local taxes in the then present year, and shall enter upon its records the aggregate true cash value of such property." For the purpose of apportioning the state taxes, the *Commission* is required by sec. 70.57 to "determine and assess the relative value of all property subject to taxation in each county."

By sec. 68.04 it is made the duty of the *Commission* "to collect from time to time statistics of recorded sales of real estate in each county and of the assessed valuation of the lands included in such sales."

It can readily be appreciated that the *Tax Commission* cannot view all of the taxable property of the state, and the determinations made by it of the true value of the taxable property of the state must be made in some other way. Naturally they take the various assessments made by the various local assessors as a base, and to that they apply the ratio of assessed valuation to true valuation as they have found it to be by a comparison of the assessed valuation with the actual sales value ascertained in the manner above indicated plus such other knowledge or information as they have been able to ascertain from any source. It is safe to say, however, that the comparison of the assessed value with the sales value furnishes them the most important source of the information upon which their conclusions rest. To say that conclusions arrived at in this way are not of greater dignity, and that such methods followed by men experienced in taxation matters do not lead to more dependable and accurate conclusions, is to say that the work of the *Tax Commission* rests upon the sands and the result has no more stability than a house of cards. It would be to set at naught the carefully constructed machinery to bring about more just results in the administration of our taxation laws. Such methods have the sanction of the law and their fruits abundantly attest their potency. These considerations would seem to demonstrate that the findings of the income tax assessor are to be exalted far above the assessment made by the local assessor, and that, where the two conflict, the law accords to the findings of the income tax assessor a weight and dignity that far outweighs the assessment made by the local assessor. We must conclude that there was sufficient evidence to sustain the findings of the trial court.

It does not follow, however, that the findings of the trial court justify the judgment rendered. By sec. 76.48 the *Tax Commission* is required to assess the property of a public utility extending into two or more assessment districts and to certify to each assessment district the proportion of the assessed valuation belonging to each. The valuation so assessed is then placed upon the tax roll of the respective assessment districts and to it the rate of taxation prevailing in that municipality is applied. In assessing these utilities the *Tax Commission* was bound by the same rule that governs local assessors, requiring them to assess property at its full cash value. No taxpayer can set aside such an assessment. Neither can the court command the *Tax Commission* to make a different assessment. The statute did not permit the *Tax Commission* to make an assessment which shall be proportionate to the assessed valuation of the other property in the various towns. The statute then existing proceeded upon the theory that all property was assessed at its true cash value, and hence utility properties such as that owned by the plaintiff must be assessed at their true cash value. While the statute gave the right of appeal as herein exercised, the issues which may be raised upon such appeal were whether the *Commission* properly valued the property or whether it properly certified to each assessment district the proportion of the assessed valuation of such property belonging to each such assessment district. The plaintiff does not complain that its property was assessed at more than its actual cash value. The complaint is confined wholly to the proposition that its property was assessed higher in proportion than other property in the town, and hence it was required to pay more than its just proportion of the taxes. Similar complaints have been made by taxpayers from a very early day. The remedy for such a situation has always been a reassessment. It has never been considered the proper function of a court to fix the

amount of taxes which a taxpayer should pay under such circumstances, or to make a judicial assessment of his property. It was provided by sec. 1210*b*, Sanborn & Berryman's Statutes of 1898, that where such a situation developed in any action brought to avoid or set aside in whole or in part any assessment, the court should immediately stay all proceedings in such action until a reassessment of the property of the district could be made. *Marsh v. Board of Supervisors,* 42 Wis. 502; *Flanders v. Merrimack,* 48 Wis. 567, 4 N. W. 741; *Single v. Stettin,* 49 Wis. 645, 6 N. W. 312. This is still the law of this state. Sec. 75.54, Stats. The relief to which plaintiff was entitled at the time the action was begun could have been ascertained only by a reassessment provided by sec. 75.54. By ch. 436 of the Laws of 1925, however, sec. 76.48 has been amended by adding a provision that "the tax commission shall have power to equalize the assessments provided for in section 76.47 with the assessments of real and personal property in such assessment district." In view of this provision of the statute, it being remedial in nature, the trial court should stay proceedings and direct the *Tax Commission* to proceed under this provision of the statutes and equalize the assessment of plaintiff's property with the other property of the respective towns in which it is located. It should be remarked, however, that some evidence was excluded by the trial court tending to show that a short time after the assessment of plaintiff's property here in question the property was sold for a substantially greater amount than that at which it was assessed. In equalizing the assessment the *Tax Commission* no doubt has the power to correct any mistake it made in the valuation of plaintiff's property and to bring about a result that will be just and equitable upon the facts as they actually existed.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

Rosenberry and Stevens, JJ., took no part.