EDWARD A. WIEGNER, Secretary, Department of Revenue
You have requested my opinion "on whether the mill rate limitations imposed on the levying of property taxes by towns, villages and cities by secs. 60.18 (1), 61.46 (1), 62.12 (4) and65.07 (1) of the Statutes apply to local assessed values or to full values."
It is my opinion that these mill rate limitations apply to local assessed values which do not exceed full values.
It is a matter of common knowledge that in nearly every municipality in the State of Wisconsin property is assessed for tax purposes based upon a valuation lower than its full value. *Page 50 
As early as 1862 the Supreme Court of the State of Wisconsin recognized the practice when it observed in Dean v. Gleason
(1862), 16 Wis. 1, at p. 18:
"It is further objected that the assessors, before making their lists, agreed to follow the assessment roll of the previous year, in which property was rated at about one-third of its value. It is a notorious fact that this has been the common practice of the assessors in this state; and that property has usually been assessed in tax lists at less than half of the value at which it would generally be estimated. . . ."
The first bulletin of the Wisconsin Tax Commission dated January, 1921, published financial statistics of Wisconsin municipalities. In explaining a table attached to the bulletin, the Tax Commission stated:
"The first column to the right shows 1920 assessed value of all property in each city according to the latest reports of assessors of income. The ratio of assessed to true value (second column) is based on the true value of 1919 — one year."
In Peninsular Power Co. v. Wisconsin Tax Commission (1928),195 Wis. 231, 218 N.W. 371, the court said at p. 235:
"While the law requires local assessors to assess the property of their respective assessment districts at its true cash value, it has long been a matter of common knowledge that they do not do so. . . ."
And at p. 236:
". . . But the law really proceeds on the theory that the assessor may not be faithful to the mandate of the statute in assessing property at its full cash value, and the assessor of incomes is required to test the assessment of the various assessors in his district. . . ."
The assessor's oath is found in sec. 70.49, Wis. Stats., and recognizes that property is not assessed at full value in view of the following language incorporated into the oath:
". . . that the valuations of real and personal property as set down by us (or as corrected by the board of assessors in cities of the 1st class) in said roll have been made impartially according to our *Page 51 
best skill and judgment and are the just and equitable valuations of such property at a . . . . per cent level of fair market value; . . ."
It is somewhat paradoxical that ch. 433, Laws of 1969, which amended the assessor's oath by adding the phrase, "at a . . . per cent level of fair market value," also provided in sec. 1 as part of its "Statement of Policy and Purposes" in the creation of a state-wide county tax assessor system, the following: "(2) That all property should be assessed at full market value." The legislature thus recognized within the terms of one act the practical reality that locally assessed property valuations were a percentage of full value, although the desired intent was to assess property at 100 percent of full value.
Although it was not originally intended, the terms "assessed values" and "full values" have acquired different meanings. "Assessed valued" are those values as of May 1 of each year placed by local assessors upon all taxable general property located within their various taxing districts. Assessed values are not likely to represent the full values of these properties. "Full values" represent the actual market values, and are determined by the Department of Revenue each year under sec.70.57, Wis. Stats. That section had its origin in sec. 4 of ch. 130 of the Laws of 1868 which created a State Board of Assessment and directed it, inter alia, to determine the relative value of all taxable property in each county, which valuation was required to "be the full value according to their best judgment."
Assessment ratios are determined for each town, village and city by dividing their assessed values by their full values. Assessment ratios indicate the average percentages of full values at which all taxable general property was valued by local assessors for property tax purposes. These ratios vary substantially, ranging from lows of around 20 percent to a few highs which exceed 100 percent, as reported in the "Town, Village and City Taxes — 1971" publication of the Wisconsin Department of Revenue. The reported 1971 assessment ratio for the entire State was 60.56 percent.
Over the years the legislature has required local assessors to assess real property "at the full value which could ordinarily be obtained therefore at private sale," as presently set forth in sec. 70.32, Wis. Stats. Similarly, sec. 70.34, Wis. Stats., requires that "all articles of personal property shall, as far as practicable, be *Page 52 
valued by the assessor upon actual view at their true cash value; . . ." Sections 70.32 and 70.34 find their origins in secs. 16 and 18, ch. 130, General Laws of 1868. Section 16 required that real property shall be valued "at the full value which could ordinarily be obtained therefor at private sale." Section 18 relates to the assessment of personal property, and the first reference to personal property being assessed at its "true cash value" is found in sec. 1 of ch. 106 of the General Laws of 1869.
Thus, for over 100 years the statutes have provided that real property be assessed at "full value" and personal property be assessed at "true cash value", terms which are synonymous. InState ex rel. Baker Mfg. Co. v. Evansville (1952), 261 Wis. 599,53 N.W.2d 795, the court, after referring to the language in secs. 70.32 and 70.34, Wis. Stats., said at pages 608 and 609:
". . . In each class of property they presuppose a value at which a willing buyer and a willing seller would deal. . . . In our view the command of sec. 1, art. VIII of the Wisconsin constitution, requires uniformity of taxation, according to value, of real and personal property without distinction. The methods of determining true, current value necessarily differ in the absence of significant sales, but when once the true value is arrived at, each dollar's worth of one sort of property is liable for exactly the same tax as a dollar's worth of any other sort of property, and to assess real property at a different fraction of the value than personalty is error. . . ."
The Baker case, supra, is particularly significant for saying at p. 609:
". . . The statute and the assessor's oath contemplate the assessor's valuation will be 100 per cent of such theoretical sale price, but no taxpayer can be considered aggrieved by discrimination if the assessment is some fraction of such value, applied uniformly to all property . . . ."
Thus, although the court has acknowledged the legislative intent that assessed value should be 100 percent of full value, the practice of assessed value being a uniform fraction of full value has been condoned, at least to the extent of not violating the uniformity clause of Art. VIII, sec. 1, of the Wisconsin Constitution. *Page 53 
The Wisconsin Supreme Court has never addressed itself to the question of whether assessed value must be 100 percent of full value for mill rate limitation purposes.
The practice of placing an assessed value at only a fraction of full value developed probably because of the psychological effect upon taxpayers created by low valuations. Taxpayers seem to be more concerned about valuations than rates, although there is a growing awareness of the latter as taxpayers become better informed. Contrary to most other forms of taxation, property tax rates are variable within certain limitations. Often an assessor's task was made easier simply by leaving valuations virtually untouched, and adjusting the rate upwards to obtain the needed revenues. It is interesting to note that one of the few periods during which assessment ratios were closer to 100 percent of full value was during the depression years of the 1930's when assessed valuations were left virtually untouched while the fair market value of property was declining.
An examination of the four sections of the statute to which your inquiry makes specific reference discloses that the limitations imposed by the legislature are based upon assessed values.
Section 60.18 (1), Wis. Stats., provides for a limitation not to exceed "one per cent of the assessed valuation of such town." Limitation language upon town assessing authority relating to a percentage of assessed valuation appeared early in sec. 776 of the 1898 Revised Statutes.
Section 61.46 (1), Wis. Stats., provides for a limitation not to exceed "two per centum of the assessed valuation of such property." Limitation language upon village assessing authority relating to a percentage of assessed valuation appeared early in sec. 914 of the 1878 Revised Statutes.
Section 62.12 (4), Wis. Stats., provides for limitations upon cities not of the first class not to exceed designated percentages "of the assessed value of the real and personal property in the city." Limitation language upon the assessing authority of cities not of the first class relating to a percentage of assessed value appeared early in ch. 199, Laws of 1895. *Page 54 
Sections 65.07 (1) (a) and (f), Wis. Stats., provide for limitations upon the assessing authority of the City of Milwaukee not to exceed designated percentages of the assessed valuation of the taxable property in the city. These limitations had their origin in sec. 2 of ch. 33, Laws of 1921, and in ch. 581, Laws of 1921.
Accordingly, the legislature has consistently provided over a number of years for the mill rate limitations to be applied to assessed values and assessed valuations. Your concern is whether these mill rate limitations applying to assessed values and assessed valuations apply to the actual assessed values as determined at the local level or to full values, such as those which are determined by the Wisconsin Department of Revenue under sec. 70.57, Wis. Stats., and those few municipalities which may be assessing at 100 percent of full value.
An observation concerning a somewhat analogous situation is appropriate at this point.
In 1955, Art. XI, sec. 3 of the Wisconsin Constitution was amended so that the limitation on indebtedness of school districts and cities authorized to issue bonds for school purposes was required to be based on the value of taxable property in such school district or city as equalized for State purposes.
After the 1955 amendment the relevant phrase of this section, with the new language underscored, reads:
". . . No county, city, town, village, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to any amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained,other than for school districts, by the last assessment for state and county taxes previous to the incurring of such indebtednessand for school districts by the value of such property asequalized for state purposes: except that for any city which is authorized to issue bonds for school purposes the total indebtedness of such city shall not *Page 55 
exceed in the aggregate eight per centum of the value of such property as equalized for state purposes: the manner and methodof determining such equalization for state purposes to beprovided by the legislature. . . ."
The question put to the voters was:
"Shall section 3 of article XI of the constitution be amended so that the limitation or the indebtedness of school districts and cities authorized to issue bonds for school purposes shall be based on the value of the taxable property in such school district or city as equalized for state purposes rather than on the local assessed value of such property, such method of determining equalized value for state purposes to be provided by the legislature?"
The constitutional limitation imposed by the phrase "last assessment for state and county taxes previous to the incurring of such indebtedness" was interpreted by the Wisconsin Supreme Court in State ex rel. Marinette, T. W. R. Co. v. TomahawkCommon Council (1897), 96 Wis. 73, 91. 92, 93, 71 N.W. 86, as follows:
". . . We think, therefore, that by the `last assessment for state and county taxes previous to the incurring of the indebtedness' is intended the last assessment in the municipality, as equalized by its board of review, next before the time fixed for the completion of the road and the delivery of the bonds. The record does not give this date, but as the road was to be completed by December 1, 1895, it is a fair inference from the pleadings and finding that it was completed by that time. The assessment intended by the constitutional provision is the assessment of the town, city, or village, as equalized by its board of review, made for the purposes of general taxation, and there is no other assessment, within the meaning of this provision, `for state and county taxes.' The so-called `state assessment' is made on the third Monday of May, before the local assessments are made, and `from all the sources of information accessible to the board, as a means of apportioning state taxes between the several counties.' A valuation of the property in the several counties is thus arrived at R.S. sec. 1069. At the annual meeting of the county board in November, the local assessments, having been completed in the meantime, with statistical statements, are laid before the county board, and it is then `to determine and *Page 56 
assess the relative value of all the taxable property in each town, city, and village,' as a means of apportioning the state and county taxes between such towns, cities and villages; but the taxes therein are computed and extended upon the local assessments, as determined by the local assessors and boards of review. The object of the provision, by which resort is to be had to the `last assessment for county and state taxes,' is to prevent a resort to special assessments, which the legislature might authorize for the purposes contemplated in the amendment only, and as a safeguard against possible evasion of its true intent and purpose. There is no assessment distinctively made for county taxes, nor any distinctively made for state taxes, in any other sense than has been stated; and to hold that there are such would be to render the provision indefinite and uncertain as to which so-called `assessment' was intended. The last assessment of the town, city, or village as fixed by the local board of review, upon which county and state taxes may be extended, as well as local taxes, is clearly the assessment intended."
The court reaffirmed this interpretation in School District v.First Wisconsin Co. (1925), 187 Wis. 150, 152, 203 N.W.2d 939. The court in that case held that the words "equalized assessment" referred to in sec. 67.04 (1), Stats., meant the assessment as fixed, corrected or equalized by the local board of review. The wording of that section was amended by ch. 157, Laws of 1963, so that the reference to the value of taxable property in a municipality for municipal borrowing purposes referred "to such value as equalized for state purposes" instead of "to such value according to the last assessment thereof for state and county taxes."
Thus, for municipal borrowing purposes, the limitation has been changed from what amounts to "assessed value" to what amounts to "full value."
Although the wording is somewhat different, it is difficult to distinguish "assessed value" from "last assessment for state and county taxes." It is likewise difficult to distinguish "full value" from "value as equalized for state purposes," particularly in view of the wording of sec. 70.57 (1), Wis. Stats., which requires the state to value all property at "full value according to its best judgment."
The last session of the legislature supplied additional evidence of the continuing differences in the meanings of"assessed value" and *Page 57 
"full value." Although this legislation was not enacted into law, it is significant that sections 74 through 78 of 1971 Assembly Bill 1477 (the proposed Budget Review Bill) proposed that property tax rate limitations be applied to full value rather than assessed value. Similar language was found in Assembly Substitute Amendment 2 to Assembly Bill 1477. The final Budget Review Bill, Assembly Bill 1610, which was adopted as ch. 215, Laws of 1971, did not include these proposed changes. The "Section by Section Summary of Assembly Bill 1477, Assembly Substitute Amendment 2 to Assembly Bill 1477, and Assembly Bill 1610," prepared by the Wisconsin Legislative Fiscal Bureau, dated March 8, 1972, stated at pages 44-45:
"3. Property Tax Mill Rate Limits
"a. AB1477 — Sections 74-78 change the mill rate limit in cities and villages on taxes for municipal purposes as follows:
"1. The village limit is changed from 2% of assessed value to 16 mills on the full value of taxable property.
"2. The city limit is changed from 3.5% of assessed value to 16 mills on the full value of taxable property.
"3. The Milwaukee limit is changed from 11 mills on assessed value to 16 mills on full value, but the 16 mill limit is more inclusive in coverage.
Debt service and school costs are excluded from the new limits, which become effective January 1, 1973.
"b. Assem. Sub. Amend. 2 — Sections 74-78 changed to provide, in addition to the above, for the exclusion of municipal retirement program costs from the 16 mill tax rate limit for municipal purposes and allow municipalities above the 16 mill limit for municipal tax purposes in 1972 to maintain their 1972 tax rate for municipal purposes as their limit.
"c. AB1610 — Provisions included, but the 8 mill limit on cities for taxes levied for school purposes is deleted."
In the Senate, 1971 Senate Bill 14 proposed that the following sentence be included as a part of sec. 70.32 (1), Wis. Stats.: *Page 58 
"Full value of each parcel of real property shall be entered upon the assessment roll and no fraction, ratio or proportion of such full value shall be deemed to satisfy this requirement."
and that this sentence be included as a part of sec. 70.34, Wis. Stats.:
"True cash value of all personalty shall be entered upon the assessment roll and no fraction. ratio or proportion of such true cash value shall be deemed to satisfy this requirement."
In conclusion, it is my opinion that the mill rate limitations in secs. 60.18 (1), 61.46 (1), 62.12 (4) and 65.07 (1) (a) and (f), Wis. Stats., apply to assessed values which do not exceed full values. Nothing would prevent local assessing authorities from increasing their effective mill rate limitations by valuing their taxable property at 100 percent of full value, as the statutory scheme originally intended. Any concern over this conclusion placing a stricter limitation upon local assessing authorities than was originally intended by the legislature is countered by the observation that such a concern is easily removed if local assessing authorities would make property assessment valuations equal to full values, as was also originally intended by the legislature. Those towns, villages and cities which may find themselves at the limits of their taxing authorities should not be heard to complain that the statutory mill rate limitations are preventing them from raising additional needed revenues when their assessed values are being entered on their local assessment rolls at less than 100 percent of full values.
RWW:APH