Henry N. MARTINSEN, Henry C. Martinsen, and Jack G. Martinsen, Petitioners-Respondents,

v.

The BOARD OF REVIEW OF the TOWN OF IRON RIVER, and Marie McLean, Clerk of the Board of Review of the Town of Iron River, Respondents-Appellants.

Court of Appeals

*No. 91-0373-FT. Submitted on briefs May 15, 1991.—Decided June 18, 1991.*

(Also reported in 472 N.W.2d 574.)

On behalf of the respondents-appellants the cause was submitted on the briefs of *Thomas R. Casper* of *Casper Law Office* of Washburn.

On behalf of the petitioners-respondents the cause was submitted on the briefs of *Thomas T. Lindsey* of *Spears, Carlson & Lindsey* of Washburn.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The Board of Review for the town of Iron River appeals an order reversing the board's determination that the Martinsens' purchase of certain prop-

erty was not an "arm's length" sale and, therefore, that the sale price did not accurately reflect the property's fair market value for property tax assessment purposes.[1] The board argues that the court improperly judged the credibility of witnesses and weighed the evidence when conducting its review of the board's determination. The board contends that, while the trial court may have disagreed with the board's determination, it was bound by that determination because substantial evidence supported the board's conclusion that the Martinsens failed to prove the elements of an "arm's length." Because we conclude that the board could not reasonably arrive at the conclusion it did, we affirm.

The Martinsens purchased the Tall Timbers Resort from Estelle Roberts for $65,000 in June 1988. The dispute in this case is whether that price represents the property's fair market value. Fair market value is defined as: " '[T]he amount it will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy.' " *Darcel, Inc. v. Manitowoc Bd. of Review*, 137 Wis. 2d 623, 628, 405 N.W.2d 344, 346 (1987) (quoting *State ex rel. Mitchell Aero, Inc. v. Board of Review*, 74 Wis. 2d 268, 277, 246 N.W.2d 521, 526 (1976)). An assessor may not assess the property by other means when presented with an arm's length sale. *Darcel*, 137 Wis. 2d at 629, 405 N.W.2d at 347. The taxpayer bears the burden of establishing that the sale price adequately reflects the fair market value. *State ex rel. Lincoln Fireproof Warehouse Co. v. Board of Review*, 60 Wis. 2d 84, 89–90, 208 N.W.2d 380, 383 (1973). Five conditions must be satisfied for a sale to be

---

[1] This is an expedited appeal under Rule 809.17.

considered an "arm's length" or "market value" transaction. They are:

 1. It must have been exposed to the open market for a period of time typical of the turnover time for the type of property involved.

 2. It presumes that both buyer and seller are knowledgeable about the real estate market.

 3. It presumes buyer and seller are knowledgeable about the uses, present and potential, of the property.

 4. It requires a willing buyer and a willing seller, with neither party compelled to act.

 5. Payment for the property is in cash, or typical of normal financing and payment arrangements prevalent in the market for the type of property involved.

*Darcel,* 137 Wis. 2d at 629, 405 N.W.2d at 346–47 (quoting the Property Assessment Manual for Wisconsin Assessors, Vol. I, at 7–3 (rev. ed. 12/82)). Of these five conditions, only the payment arrangement is not in dispute. We will address each of the other four in turn and include the relevant facts as we address each condition.

 The scope of our review on certiorari is identical to that of the trial court, and we therefore conduct our review of the board's decision independent of the trial court's conclusions. *State ex rel. Staples v. DHSS,* 136 Wis. 2d 487, 493, 402 N.W.2d 369, 373 (Ct. App. 1987). Our review is limited to:

 (1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Darcel,* 137 Wis. 2d at 626, 405 N.W.2d at 345 (quoting *Mitchell Aero,* 74 Wis. 2d at 281–82, 246 N.W.2d at 528). The present dispute centers around whether the evidence was such that the board might reasonably determine the sale was not an arm's length sale. We conclude it could not.

■■■

The test whether the board might reasonably make the determination it did is essentially the same as the substantial evidence test. *WED v. DNR,* 85 Wis. 2d 518, 538, 271 N.W.2d 69, 78 (1978). In the present case, however, the substantial evidence test asks us to decide whether substantial evidence supports the board's determination that the taxpayer failed to prove an arm's length transaction. Such a standard asks the reviewing court to fit a square block into a round hole, because the reviewing court must evaluate whether substantial evidence supports a determination that there was a lack of evidence. We therefore opt for that version of the substantial evidence test that asks whether, taking into account all the evidence in the record, reasonable minds could arrive at the same conclusion that the board did. *See Madison Gas & Elec. Co. v. PSC,* 109 Wis. 2d 127, 133, 325 N.W.2d 339, 342–43 (1982).

## EXPOSURE TO MARKET

The first condition requires that the property be exposed to the open market for the turnover time typical for that type of property. This condition does not impose an absolute and specific time period. It merely requires that the property be exposed for the *typical* turnover time. John Van Hollen, an area realtor, listed Roberts' property from September 15, 1986, through September 15, 1987. During that period at least nine parties viewed

the property. Of those nine, only the Martinsens made an offer on the property. They offered $65,000, which Roberts rejected. Approximately eighteen months after Roberts first listed the property and having received no other offers, Roberts recontacted the Martinsens to inquire if they were still interested in buying the property for $65,000. The parties closed the deal at that amount twenty-two months after the property was originally listed.

Van Hollen testified that it would be "very customary" for this type of property to be listed for one year. He further testified that he could not recall failing to sell a resort other than Roberts' property and that it would be highly unusual for his agency to show a property nine times without making a sale.

John Minor, the town's assessor, testified that he felt the normal time period for sale of this type of property slightly exceeded two years. On cross-examination, however, Minor stated that he could not dispute Van Hollen's testimony that such properties usually sell within one year. Also, as an example of a property that took longer than one year to sell, Minor pointed to the Bear Trail Resort, which was similar in operation to the Tall Timbers Resort. That property sold after one year but was foreclosed and was on the market approximately another fifteen months before selling for the second time. Based on this evidence, the board could not reasonably conclude Roberts' property was not exposed to the market for an adequate period of time for this type of property.

## BUYER AND SELLER KNOWLEDGEABLE
## ABOUT REAL ESTATE MARKET

The second condition requires that both the buyer and seller be knowledgeable about the real estate market. While the ultimate burden is on the landowner to prove an arm's length transaction, this condition *presumes* that both the buyer and seller are knowledgeable about the real estate market. *Darcel,* 137 Wis. 2d at 629, 405 N.W.2d at 346. Because no evidence was submitted to rebut this presumption, a reasonable board could not conclude that either Roberts or the Martinsens were unknowledgeable about the real estate market. In addition, there was affirmative evidence that both Roberts and the Martinsens were knowledgeable about real estate transactions.

## BUYER AND SELLER KNOWLEDGEABLE
## ABOUT PROPERTY USE

The third condition requires both the buyer and seller be knowledgeable about the property's present and potential uses. As with the previous condition, this condition presumes that the buyer and seller have such knowledge, and the board submitted no evidence rebutting this presumption. *Id.* The board contends that neither the realtor nor the Martinsens investigated the possibility of subdividing the property or turning the property into condominiums, while Minor testified that both uses of the property were potential options. The board's argument misses the mark. There is no requirement that either the buyer or seller investigates or pursues various development options for the property. This condition only requires that the parties are knowledgeable about present and potential uses of the property.

815

██

Property with a certain potential use may have a higher market value than property without that potential even though the buyer does not intend to develop that potential use. An arm's length sale requires that both buyer and seller are aware of these potential uses so that the sale price accurately reflects the fair market value. The law presumes the parties are knowledgeable about the various uses, and the board offered no evidence to the contrary. Also, the Martinsens presented evidence that both parties were aware of present and future potential uses of the property. Accordingly, the board could not reasonably conclude that either Roberts or the Martinsens lacked the requisite knowledge.

## BUYER AND SELLER WILLING BUT NOT COMPELLED TO SELL

The final condition for an arm's length sale requires a willing buyer and a willing seller with neither party compelled to act. The board contends that the sale was compelled and that the most significant evidence of compulsion was the fact that the property sold for substantially less than the fair market value. However, it begs the question to argue that because the sale price is less than the fair market value, the sale was compelled. If one of the parties was compelled to act, then the sale is not a "market value" or "arm's length" transaction, and factors other than the sale price will be considered in determining the fair market value. However, assuming the other conditions are satisfied, if the parties were willing participants, then the sale was an arm's length transaction and the sale price is, by definition, the fair market value.

The board contends that because Roberts was ninety-one and walked with the aid of a three-pronged cane and because the property was in need of repairs, it could reasonably infer that Roberts was compelled to sell. While we are bound by the reasonable inferences the board chooses to draw, *see William Wrigley, Jr., Co., v. DOR,* 153 Wis. 2d 559, 571, 451 N.W.2d 444, 449 (Ct. App. 1989), we reject the inference the board drew on this point.

The facts to which the board points may very well be reasons underlying Roberts' decision to sell. They do not, however, support the inference that she was *compelled* to sell. To "compel" means "to drive or urge forcefully or irresistibly" or "to cause to do or occur by overwhelming pressure." *Webster's New Collegiate Dictionary* 229 (1977). In every sale, the buyer will have reasons to buy, and the seller will have reasons to sell. Here, the concern is whether the parties were willing buyers and sellers.

The Honorable Robert N. Ledin, retired judge and Roberts' stepson, aided Roberts in her real estate, income tax and banking matters. He testified that Roberts made the decision to sell gradually and did not need the proceeds from the sale. He pointed to the fact that Roberts has yet to use either the principal or interest from the sale. Ledin testified that Roberts was getting older and wanted to better her living conditions, so she decided to sell her property and move to Harrisburg, Oregon, to live with one of her grandchildren. Also, contrary to the board's assertion, Roberts' rejection of the Martinsens' initial bid indicates that she was not "desperate to be rid of the property." Based on these facts, the board could not reasonably infer that Roberts' age and physical condition, together with the property's

817

need of repairs, amounted to an "overwhelming" or "irresistible" pressure to sell. Otherwise stated, the board could not reasonably conclude that Roberts' reasons for selling rose to the level of compelling her to sell.

Based on all the evidence, the board could not reasonably conclude that the Martinsens' purchase of Robert's property was not an arm's length sale. We therefore affirm the trial court order reversing the board's determination.

*By the Court.*—Order affirmed.