William D. STEENBERG, Plaintiff-Respondent-Petitioner,

v.

TOWN OF OAKFIELD, Defendant-Appellant.

Supreme Court

*No. 90-1032. Oral argument November 25, 1991.—Decided April 8, 1992.*

(Also reported in 482 N.W.2d 326.)

For the plaintiff-respondent-petitioner there were briefs by *Elizabeth V. Pavlick* and *Sager, Pavlick & Writz, S.C.*, Fond du Lac and oral argument by *Ms. Pavlick.*

For the defendant-appellant there was a brief by *John A. St. Peter* and *Kathryn M. Bullon-Stommel* and *Edgarton, Ondrasek, St. Peter, Petak & Massey*, Fond du Lac and oral argument by *John A. St. Peter.*

WILLIAM A. BABLITCH, J. William Steenberg (Steenberg) seeks review of an unpublished decision of the court of appeals. Steenberg argues that he met his burden of proving that his recent purchase of farmland was an arm's-length transaction and that it was error for the Town of Oakfield Board of Review to uphold their tax assessor's valuation in excess of the sale price. The court of appeals concluded that the Town of Oakfield, in determining the assessment, acted appropriately in disregarding the price Steenberg paid for the land. Two issues are presented. The first issue is whether Steenberg met his burden of proving that his recent purchase of the property was an arm's-length sale. We conclude that he did. The second issue is whether, once an arm's-length sale has been established, it is error to use other factors to assess the value of the property. We conclude that it is error. Accordingly, we reverse the decision of the court of appeals.

The relevant facts are not in dispute. The property at issue is a 210 acre farm located in the Town of Oakfield. ITT Financial Services acquired the farm in 1986. The farm was first placed on the market by ITT sometime in October of 1986 and it was advertised continuously for approximately six months. In December 1986, the property was offered at a public auction. Two undisclosed offers were made at the auction. ITT rejected both of them. Steenberg purchased the farm in May, 1987, for $85,000 in cash.

The farm property is zoned exclusive agricultural under the town's zoning ordinance. The town assessor used the State of Wisconsin Agricultural Farm Land Valuation Categories to assess the farm. The assessor placed different valuations on the different grades of land. The assessment was based on the standard value for the different types of land, ranging from $400 per

acre to $750 per acre. The assessment as of January 1, 1987, was $139,000. Minor adjustments to the assessment were made in 1988 and 1989.

Steenberg asked the town assessor to reduce the assessment of his farm to reflect the $85,000 purchase price. Subsequently, Steenberg appeared before the Town of Oakfield Board of Review to challenge the assessment. At the hearing, Pat Reilly, a Wisconsin real estate broker, testified that the farm had been listed for six months, and that the normal listing contract for this type of land was for a six month period. Reilly also testified that ITT had assets of over $10 billion and, therefore, was not forced to sell the property but could sell it on the open market to a ready, willing and able buyer or lease the farm. The Board reaffirmed the 1987 assessment. The Board concluded that the sale to Steenberg did not conclusively establish the property's fair market value. The Board expressed its view that six months was not a typical turnover time for such property and that the farm had not been given a "fair chance" at a sale. It also determined that the sale price was substantially lower than the valuation of similarly graded farmland in the area.

Thereafter, Steenberg brought an action for certiorari in the circuit court.[1] He argued that the May, 1987, sale price was the best information obtainable to determine fair market value, that the sale was an arm's-length sale, and that the Board was required to consider the sale price as the fair market value of the property. The Town, on the other hand, argued that the sale was merely prima facie evidence of the fair market value and the assessor could look to other factors in assessing the property. The

[1]The original certiorari action concerned only the 1987 assessment of the farm property. Later the parties stipulated to include the 1988 and 1989 assessments of the property as well.

circuit court reversed the decision of the Board of Review and held that nothing in the record indicated that the sale was not an arm's-length transaction. The circuit court held that real property must be assessed under sec. 70.32, Stats., using the "best information the assessor can obtain . . .," and that the sale of property in an arm's-length transaction is the best information of fair market value. It further held that there was no indication in the record that the sale of the property was not an arm's-length sale, and thus the assessor erred in considering other factors in determining fair market value.

The court of appeals reversed. It concluded that Steenberg had not met his burden of proving that the sale was an arm's-length transaction, and therefore, the assessor had properly considered other factors in determining the farm's fair market value. We granted Steenberg's petition for review.

■

The scope of our review on certiorari is identical to the circuit court, and we therefore conduct our review of the Board's decision independent of the circuit court's conclusions. *State ex rel. Staples v. DHSS,* 136 Wis. 2d 487, 493, 402 N.W.2d 369, (Ct. App. 1987). We must "determine, from the evidence presented to the board of review, whether the valuation was made on the statutory basis." *Rosen v. Milwaukee,* 72 Wis. 2d 653, 661, 242 N.W.2d 681 (1976). In determining whether the valuation has been made upon the statutory basis we follow these principles:

> 'There is a presumption that the assessor's valuation is correct. Such valuation will not be set aside in the absence of evidence showing it to be incorrect.
> 'The burden of producing evidence to overcome this presumption is upon the person who seeks to

571

attack the assessment, and the presumption survives until it is met by credible evidence.

'If there is a conflict in the testimony respecting the value of the property the court does not substitute its opinion of the value for that of the board of review. If there is credible evidence before the board that may in any reasonable view support the assessor's valuation, that valuation must be upheld. . . .

'If there be adduced before the board competent evidence which is unimpeached and uncontradicted and which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board.' Disregard of such evidence is considered to be jurisdictional error. *Rosen,* 72 Wis. 2d at 661–662 (citations omitted).

The first issue is whether Steenberg met his burden of proving that the transaction in question was an arm's-length sale. Section 70.32(1), Stats., governs the valuation of real property for the purposes of taxation. It requires the assessor to value real property at the "full value" which could ordinarily be obtained at a private sale.[2] This court has construed, for purposes of real property assessment, the statutory phrase "full value" to mean fair market value: " 'the amount it will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy.' " *Darcel v. Manito-*

---

[2]Section 70.32(1) provides in full:

**70.32 Real estate, how valued.** (1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at a private sale.

*woc Review Bd.,* 137 Wis. 2d 623, 628, 405 N.W.2d 344 (1987) (quoting *State ex rel. Mitchell Aero v. Bd. of Review,* 74 Wis. 2d 268, 277, 246 N.W.2d 521 (1976)). "This court has repeatedly emphasized that, in order for the sale price to be considered the best information of the market value of the property, the sale must be an arm's-length transaction." *Flood v. Lomira Board of Review,* 153 Wis. 2d 428, 436, 440 N.W.2d 575 (1990) (citation omitted). In the presence of an arm's-length sale it is error for an assessor to use other means to assess the value of the property. *Darcel,* 137 Wis. 2d at 629. Section 70.32(1) also requires that the assessor value property consistent with The Property Assessment Manual For Wisconsin Assessors. The Property Assessment Manual For Wisconsin Assessors, Vol. I, Part 1, page 7–3 (Revised 12/87) states the conditions that must be satisfied for a sale to be considered a "market value" or "arm's-length" transaction:

1. It must have been exposed to the open market for a period of time typical of the turnover time for the type of property involved.

2. It presumes that both buyer and seller are knowledgeable about the real estate market.

3. It presumes buyer and seller are knowledgeable about the uses, present and potential, of the property.

4. It requires a willing buyer and a willing seller, with neither party compelled to act.

5. Payment for the property is in cash, or typical of normal financing and payment arrangements prevalent in the market for the type of property involved.

6. The sales price must include all of the rights, privileges, and benefits of the real estate. For

 rental property, this includes both the lessor's and lessee's interests.

The taxpayer has the burden of proving that a sale was an arm's-length transaction. *State ex rel. Evansville Merc. Asso. v. Evansville,* 1 Wis. 2d 40, 43–44, 82 N.W.2d 899 (1957).

The Town of Oakfield argues that Steenberg failed to satisfy his burden of proving that his recent purchase was an arm's-length transaction, and thus the Board's failure to assess the property at the sale price was not jurisdictional error. The parties agree that the only dispute regarding whether Steenberg's purchase was at arm's-length concerns the first condition required in the Assessor's Manual. Specifically, the Town of Oakfield argues that Steenberg failed to satisfy the first condition of the Assessor's Manual for an arm's-length transaction—that the property be exposed to the open market for a period of time typical of the turnover time for the type of property involved. We disagree.

Steenberg submitted uncontroverted evidence that the farm property in question was marketed at a public auction where two offers were rejected by ITT; the property was listed with a real estate agent; and the property was advertised continuously in the "Milwaukee Journal," the "Action Advertiser," and the "Fond du Lac Reporter" until it was sold to Steenberg. In total the property was advertised for approximately a six month period of time.

Furthermore, Pat Reilly, (Reilly) ITT's real estate agent, testified at the Board of Review that his office had just completed eight farm sales and the duration of the average listing contract was for six months. Specifically, his testimony can be summarized as follows:

1. Reilly appraised the subject property for ITT in October of 1981 at $1,000 an acre, in October of 1984 for

$750 an acre, and in October of 1986 for $400 to $500 an acre.

2. In October of 1986 ITT decided to sell the farm for its highest potential sale value.

3. On or about October 15th, Reilly started to market the farm and decided to offer it at public auction on December 12, 1986.

4. At the auction there were two offers that were not acceptable, and ITT decided that it would follow up with a regular offering through the newspapers and list the 210 acres of land at $500 an acre.

5. ITT was in no way forced to sell or liquidate the property, but was looking for a ready, willing and able buyer to purchase the property.

6. On March 27, 1986, after six months of consecutive advertising of the property, ITT entered into an offer to purchase with Steenberg at $404 an acre.

7. Reilly, in his conversation with ITT regarding the Steenberg offer, suggested that ITT should accept the offer as the agricultural market, specifically the value of corn, was depressed. Reilly based these observations on a meeting with ASCS in which they reviewed the production of the property. Reilly further testified that the property was worth $404 an acre and that he advised that ITT should sell it.

8. On May 15, 1987, the sale was closed for $85,000 cash with no financing. ITT made no concessions whatsoever. Reilly testified that he considered it a fully arm's-length transaction.

None of this testimony was contradicted or impeached. However, during the Board's examination of Reilly, the Board expressed concern that six months on the open market was not a very long time to sell farm land. The following exchange took place between the Board and Reilly.

Board: "How long did you have it up for sale?"

Reilly: "From October until March 21; six months."

Board: "Kind of rushed it through didn't you?"

Reilly: "Well, the normal listing period is six months."

Board: "That's not very long."

Reilly: "That's the average that a listing contract is written. It was not offered previous to sale for that. I understand that might have tried to sell it themselves, I don't know. I'm telling you from my experience."

When the Board again raised the issue the following exchange took place:

Board: "You come in here saying that you have had this up for sale for six months. I had my farm up for sale too. Approximately the same amount of time. I had one that was halfway interested. If you would have had this up maybe for a year or two, they I [sic] could understand saying, well maybe that is all that it is worth. Actually, it never had a fair chance. Six months is not very long."

Reilly: "We [sic] just in the process of probably the eighth farm sale this year already and I don't know who handles your stuff over here but we are considered farm brokers and land brokers and that is normally the listing period we take is six months. We have just sold three other ones and . . ."

It is evident that both in his initial testimony and in his response to questioning by the Board, the issue Reilly was addressing was whether six months was a typical or normal time in which his realty company

"*sold*" farm property. In other words, six months was the typical "turnover" time. This seems to explain why Reilly emphasized that they had sold eight farms this year already and had just sold three more. He specifically noted these sales in response to a question concerning whether six months was long enough to have property on the market in order to obtain a good sale price. Clearly, he was explaining that six months is the normal listing period because six months is the normal time it takes to "*sell*" the property and thus the normal "turnover" time. Although Reilly may not have used the specific language of the manual, i.e., turnover time, all of his testimony indicated and established that the sale was an arm's-length transaction.

The Town of Oakfield argues that none of this evidence supports the conclusion of an arm's-length transaction because Reilly used the word "listing" time, as opposed to "turnover" time. We disagree. As noted above, although Reilly never used the exact formulation "exposed on the open market for a period of time typical of the turnover time for that type of property," the import of his testimony was that in his experience as a realtor selling farm property, six months was a typical time in which to sell such property. In an informal proceeding such as a Board of Review hearing, this court finds it inappropriate to insist on rigid legal word usage. A taxpayer may meet his or her burden of proof in a reasonable fashion; it is not necessary that the taxpayer utilize the exact language of the manual.

Furthermore, it appears the Board must have understood Reilly's answers as indicating the time in which it takes to sell farm property. If that was not clear to them, one of the Board members surely would have

simply said "we don't care about listing time; we want to know how long it takes to sell farm property." Instead, the Board's questioning focused on contesting Reilly's indication that six months is the normal time to sell farm property. Based on all of the above, we hold that Steenberg met his burden of proving an arm's-length transaction.

The second issue is whether, once an arm's-length transaction has been established, it is error to use other factors to assess the value of the property. In its brief the Town of Oakfield argues that even if Steenberg met his burden of establishing an arm's-length transaction, the sale price resulting from that arm's-length transaction may not always be the best indication of fair market value. The Town of Oakfield contends that even in the presence of an arm's-length transaction other factors such as the valuation of similarly graded farmland in the area may be considered by the assessor to establish the fair market value of the property.[3] We disagree.

 This court has consistently held that it is error for an assessor to use other factors to assess the value of property if there is a recent arm's-length sale. *See, e.g., State ex rel. Geipel v. Milwaukee,* 68 Wis. 2d 726, 737, 229 N.W.2d 585 (1975); *Darcel,* 137 Wis. 2d at 629.

The Town contends, however, that in our recent opinion in *Flood v. Village of Lomira,* 153 Wis. 2d 428, we indicated that an arm's-length sale may not always be

---

[3]At oral argument, the Town of Oakfield appeared to abandon this argument and its remaining arguments. In fact, counsel for the Town seemed to concede that once an arm's-length transaction has been established it is error to use other factors to assess the value of property. However, because they were raised and argued thoroughly in the briefs, we will address each argument briefly.

the best information, and other factors may be looked at to assess market value. The Town misinterprets our holding in *Flood.*

In *Flood,* the taxpayer-buyer maintained that the sale price did not represent fair market value. He argued that the sale price reflected both the full value of the real property and the value of the seller's favorable financing terms. In that case, both the Board and the taxpayer characterized the sale as an arm's-length transaction. The Board maintained that once the court determined that an arm's-length transaction had occurred, there was no need to examine other factors surrounding the sale to determine whether the sale price represented fair market value. This court, in holding that the assessor must look at the circumstances surrounding the sale to determine if the sale price really does reflect fair market value, noted that this was consistent with our prior holdings because "an assessor must consider all factors relevant to the sale *when determining whether the sale price resulted from an arm's-length transaction and is the best information of full value." Flood,* 153 Wis. 2d at 441 (emphasis added). Thus, our holding indicated that the assessor properly should investigate the circumstances surrounding the sale to determine if the sale truly is arm's-length. We did not hold that once it has been conclusively determined that a sale was arm's-length an assessor may look to other factors.

Further evidence that this is the correct interpretation of *Flood* is found in our reliance on *Darcel,* 137 Wis. 2d 623, in the *Flood* opinion. In *Darcel,* we indicated:

> The mere claim of an arm's-length sales should not foreclose the assessor from further investigation to determine the nature of the sale. Only through investigation and comparison can an assessor determine if

the sale is *truly at arm's-length. Darcel,* 137 Wis. 2d at 630 (emphasis added).

Our intention in *Flood* was to indicate that even though the parties may indicate that a sale was arm's-length, the assessor may look for certain red flags that indicate otherwise. It is the assessor's responsibility to determine if the sale truly was arm's-length. Once it is clear that it was, he may look at no other factors. An arm's-length sale is the best information of fair market value.

Furthermore, in *Flood,* we expressly indicated that the Property Assessment Manual for Wisconsin Assessors, "advises assessors to examine the financing terms between the seller and buyer, as well as other circumstances of a sale, to determine whether the sale price is the best information of market value of the real property." *Flood,* 153 Wis. 2d at 437 (footnote omitted). We took note of the fact that the financing terms between Flood and the seller may not have met the test in item 5 of the Manual, i.e., payment for the property is in cash, or typical of normal financing and payment arrangements prevalent in the market for the type of property involved. Therefore, in *Flood* we determined that there may not have been an arm's-length transaction because one of the six tests to determine an arm's-length transaction may not have been met. We therefore did not disturb our prior precedent that indicated that it is error to use other factors when the fair market value is established by an arm's-length sale of the property. We merely indicated that an assessor may look at the circumstances surrounding the sale to determine if the sale truly was an arm's-length transaction that satisfies the factors set forth in the Assessor's Manual.

In the present situation, the assessor merely testified that he values all property the same as to grades of

land, regardless of the asking price. For example, top grade farm land in the Town of Oakfield is valued at $750 per acre. There is no evidence in the record to indicate that the Board, in evaluating the assessment on review, considered or investigated the particular circumstances surrounding the sale to Steenberg to determine if the sale truly was arm's-length. Rather, the Board was concerned with whether six months on the market was a sufficient amount of time in which to obtain a fair sale price for farm property. The Board also appeared concerned that property individually owned by board members would be over-assessed compared to the farm land purchased by Steenberg if Steenberg were to prevail. The Board appeared concerned about the underlying fairness to themselves by such a determination as well as the potential lost revenue for the Town of Oakfield if every property owner contested the assessed value of his or her property. We conclude that in the face of Steenberg's arm's-length transaction, it was jurisdictional error for the Board to uphold the assessor's valuation based on consideration of other factors indicating a different market value.

Finally, the Town argues that even if the Steenberg purchase was an arm's-length transaction, the assessor was not obligated to use the May, 1987, sale price for the January 1, 1987, assessment. This argument is without merit.

Section 70.10, Stats., requires assessors to assess all property as of January 1 of each year. However, the statute provides for exceptions and gives the assessor until the first Monday in April to complete the assessments. Additionally, sec. 70.32(1) requires that the assessor use the best information practicably available. The Assessor's Manual at 21.3–3 indicates that a recent

arm's-length sale is the best information to determine the full or market value of the property.

In the present situation, the sale of the property occurred in May 1987, a month after the assessor's extended deadline for assessing property. Thus, the assessor clearly was not bound to seek out this post-assessment sale. However, if evidence of an actual arm's-length sale is before the Board of Review, that information would provide a proper basis for reassessment. *Darcel,* 137 Wis. 2d at 640.

For the reasons set forth, we reverse the judgment of the court of appeals and remand this case to the circuit court with instructions to remand to the Board of Review of the Town of Oakfield for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded to the circuit court with instructions to remand to the Board of Review of the Town of Oakfield for further proceedings consistent with this opinion.