Robert A. DONEFF and Christopher C. Allie, d/b/a Memorial Drive Associates, Petitioners-Appellants,

v.

CITY OF TWO RIVERS, BOARD OF REVIEW, Kenneth Dodge, Chairman, Anthony Roach, Acting Secretary, Steven Nenonen, City Manager, Gregory Erickson, Member, and Tim Tomchek, Member, Respondents-Respondents-Petitioners.

Supreme Court

*No. 92–2812–FT. Oral argument March 2, 1994.—Decided June 2, 1994.*

(Also reported in 516 N.W.2d 383.)

For the respondents-respondents-petitioners there were briefs by *John M. Webster,* city attorney for the City of Two Rivers and *John M. Bruce* and *Savage, Gregorski, Webster, Stangel & Bendix,* Manitowoc and oral argument by *John M. Webster.*

For the petitioners-appellants there was a brief by *Mark A. Miller,* and *Dewane, Dewane, Kummer & Lambert,* Manitowoc and oral argument by *Mark A. Miller.*

Amicus curiae brief was filed by *Curtis A. Witynski,* legal counsel, Madison for the League of Wisconsin Municipalities.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals, reversing a judgment of the Manitowoc County circuit court, Judge Darryl W. Deets, that, after a sec. 70.47(13), Stats., review,[1] affirmed a decision of the Board of Review of the City of Two Rivers that the city assessor had correctly valued property recently purchased by Doneff and Allie, d/b/a Memorial Drive Associates (Doneff). The first question we address on review is whether the taxpayer or the assessor bears the burden of proof on the six conditions set forth in the *Property Assessment Manual for Wisconsin Assessors* that must be met to show that a recent sale was an arm's length transaction and therefore indicative of fair market value. The court of appeals concluded that a legal presumption exists that the following two conditions are met: the buyer and seller are knowledgeable about the real estate market; and the buyer and seller are knowledgeable about the uses, present and potential, of the property. Relying on the long-standing rule that the taxpayer challenging an assessment has the burden of proving that a sale was an arm's length transaction, we conclude that these conditions set forth in the assessor's manual do not create legal presumptions that shift the burden of proof from the taxpayer to the city. The taxpayer retains the burden of proof on all conditions. Therefore, we reverse the decision of the court of appeals.

The second issue we address on this review is whether the Board properly sustained the assessor's valuation of the Doneff property. We conclude that it

---

[1] Section 70.47(13), Stats., provides in relevant part:

Except as provided in s. 70.85, appeal from the determination of the board of review shall be by an action for certiorari commenced within 90 days after final adjournment of the board.

did. The Board correctly concluded that the sale was not an arm's-length transaction. Doneff did not meet its burden of showing that the sellers were knowledgeable about the real estate market and the uses of the property and were not compelled to sell. The Board justifiably considered additional circumstances surrounding the sale, noting that the sale was private and the property had never been advertised at the sale price. The assessor followed statutory requirements governing assessment in the absence of an arm's length transaction. The alternative approaches provided by the assessor gave the Board a reasonable basis on which to base its conclusion that the assessed value is the fair market value of the property.

On November 22, 1989, Doneff purchased the property, whose assessed value is in dispute in this case, for $130,000. The property is a vacant building that had housed a car dealership with a showroom and a service area on a 10.56 acre paved lot. For 1990, the City of Two Rivers' assessor assessed the property, including both land and building, at $345,500,[2] a considerable reduction from the 1989 assessed value of $600,700. On April 4, 1990, Doneff filed an objection to the assessment with the City of Two Rivers Board of Review (Board), asserting that the assessment exceeded the fair market value of the real estate. On June 11, 1990, the Board conducted a hearing on Doneff's objection to the assessment.

The Board heard testimony from Christopher Allie, one of the property's owners, and Richard Ramminger (Ramminger), a tax consultant for the owners. Allie described the circumstances surrounding the

<hr>

[2] The assessor originally assessed the property at $364,000 but reduced the assessment to $345,500 before the board hearing.

1989 sale. After the death of the property owner, Bud Erdman, his wife, Shirley Erdman, and his sister became the owners of the property. Attorney William Dean, who represented the owners, suggested to Doneff that he look at the property. After viewing the property, Doneff made the purchase offer of $130,000 and the owners accepted. The property had not been listed at this price and no real estate agent was involved in the transaction.

Ramminger, Doneff's consultant, asserted that the best evidence of fair market value was the recent $130,000 sale price of the property. Ramminger added that he had spoken with attorney Dean, who told him that Shirley Erdman was not forced to sell the property. According to Ramminger, Dean stated that Erdman decided to sell the property for $130,000 because the real estate market was soft, the building had been mostly vacant for ten years, and the building needed major improvements. The Board did not hear testimony from either Dean or Erdman.

City of Two Rivers assessor John Gardner (Gardner) explained that, to arrive at the assessed value, he used a traditional cost approach considering the size of the building and its features. Gardner arrived at an initial cost of $682,195 for the building, then reduced this value by 30 percent to $477,535 to reflect low to mid-range depreciation because the building was twenty-two years old and in fair condition.

Gardner then applied a 50 percent "market adjustment," reducing the value of the building to $238,800. The "market adjustment" was designed to account for the building's structural deficits, such as energy inefficiency, and the fact that it had not proved to be easily marketable. To the $238,800, Gardner added $34,300 for the blacktop paving and $72,400 for the value of the

land, bringing the total assessed value to $345,500, or $12.03 per square foot. The valuation of the land and the blacktop was not disputed.

Gardner then did a separate analysis, looking to sales of four comparable properties in the city of Two Rivers and other nearby towns to determine the market value of the Doneff property. Three of the properties he considered are car dealerships and one is a boat sales facility. He began with the actual sales prices of the comparable properties and then adjusted them to reflect differences between the Doneff property and the comparables. The values he assigned to the Doneff property based on these comparisons ranged from $279,496 to $496,282—a range of $12.20 to $17.28 per square foot. From this comparison, Gardner concluded that the actual sale price of $130,000 did not reflect the fair market value of the property. However, Ramminger engaged in a similar comparison using only the most comparable property in Two Rivers and his analysis indicated that the Doneff property should be valued at $135,000—close to the actual sale price.

Gardner stated that he had spoken to Shirley Erdman and her attorney, both of whom said that the sale price was the best they could obtain. Nonetheless, Gardner concluded that the sale was not an arm's-length transaction. He stated that Bud Erdman had probably overvalued the property and then, because the property was on the market for so long, Shirley Erdman probably considered the property a problem and was willing to take any offer for it.

Individuals testifying at the hearing provided the Board with a number of different prices at which the property had been offered for sale between 1980–1989. Few of these figures were independently verified. The prices varied from a low in the range of $200,000 to

$300,000, to a high in the range of $600,000 to $650,000. Gardner also provided the Board with documents stating that in 1988, BRE Plastics had offered Erdman $484,545 for the property but Erdman had rejected the offer. Allie added that, at the time of the hearing, the property was listed with the Lakeshore Development Bureau at approximately $400,000.

The Board decided to sustain the assessor's valuation. During the Board's deliberations two board members, Nenonen and Dodge, expressed their reasoning. Nenonen stated that the Board had examined different methods of calculating the value of the Doneff property and the only method that was inconsistent with assessor Gardner's valuation was that urged by Ramminger, Doneff's consultant. Dodge pointed out that the closest comparable property had sold for approximately $265,000 with only one-third the amount of land on the Doneff property. Nenonen also asserted that the sale was not an arm's-length transaction. The Erdman sale was private—the property had not been listed at $130,000 nor had a real estate agent been involved. Considering the lengthy period during which the property had not sold, Dodge thought the sellers may have considered the sale a distress sale.

Pursuant to sec. 70.47(13), Stats., Doneff commenced an action in Manitowoc County circuit court for certiorari review of the Board's decision. Concluding that the Board had relied in part on the BRE Plastics offer, the circuit court remanded the cause to the Board with instructions to take evidence on the cash equivalency of that offer. After considering this evidence at a second hearing on November 11, 1991, the Board again voted to sustain the original assessment.

The circuit court affirmed the Board's decision. The circuit court explained that six conditions must be

satisfied for a sale to be considered an arm's-length transaction and therefore adequate evidence of fair market value:

1.  It must have been exposed to the open market for a period of time typical of the turnover time for the type of property involved.

2.  It presumes that both buyer and seller are knowledgeable about the real estate market.

3.  It presumes buyer and seller are knowledgeable about the uses, present and potential, of the property.

4.  It requires a willing buyer and a willing seller, with neither party compelled to act.

5.  Payment for the property is in cash, or typical of normal financing and payment arrangements prevalent in the market for the type of property involved.

6.  The sales price must include all of the rights, privileges, and benefits of the real estate. For rental property, this includes both the lessor's and lessee's interests.

(cir. ct. decision, August 3, 1992 at 1–2 (citing *Steenberg v. Town of Oakfield,* 167 Wis. 2d 566, 482 N.W.2d 326 (1992) (quoting Wisconsin Department of Revenue, *Property Assessment Manual for Wisconsin Assessors,* vol. 1, part 1, at 7–3 (1987)))).[3] The circuit court concluded that Doneff had not met the burden of proof on

---

[3] *Steenberg* had not yet been decided at the time the Board made its November 11, 1991, decision. However, in an earlier case, *Darcel, Inc. v. City of Manitowoc Bd. of Review,* 137 Wis. 2d 623, 628–29, 405 N.W.2d 344 (1987), this court had already explained that the *Property Assessment Manual for Wisconsin Assessors* set forth the conditions necessary for a sale to be

conditions two, three and four because Ramminger's testimony that the seller was knowledgeable and not compelled to sell was the only evidence in the record regarding these conditions.

The court of appeals reversed. The court of appeals stated that, because it agreed with the circuit court's determination that conditions one, five and six were met, only conditions two, three and four were at issue.[4] The court of appeals stated that because conditions two and three both use the language that the condition is "presumed," there is a legal presumption that the condition is met. The court pointed out that no evidence was submitted to rebut the presumption and therefore those two conditions were satisfied. Considering the fourth condition, the court of appeals stated that "compel" means "to cause to do or occur by overwhelming pressure". Relying on the fact that the owners had been represented by an attorney and the property had been on the market for ten years, the court of appeals stated the Board could not have reasonably concluded that the sale was compelled.

We begin our analysis by stating the assessing authority's obligations under the applicable statutes. Section 70.32(1), Stats, provides:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value

considered a market value transaction. Thus, the circuit court appropriately discussed these conditions.

[4] Actually, the circuit court did not address conditions five and six after it had determined that conditions two, three and four were not satisfied.

which could ordinarily be obtained therefor at private sale.[5]

We have had repeated opportunities to interpret sec. 70.32(1), and the law that applies to the present case was summarized in *Steenberg,* 167 Wis. 2d at 572–73:[6]

> This court has construed, for purposes of real property assessment, the statutory phrase "full value" to mean fair market value: " 'the amount it will sell for upon arm's-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy.' " *Darcel v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 628, 405 N.W.2d 344 (1987) (quoting *State ex rel. Mitchell Aero v. Bd. of Review,* 74 Wis. 2d 268, 277, 246 N.W.2d 521 (1976)). "This court has repeatedly emphasized that, in order for the sale price to be considered the best information of the market value of the property, the sale must be an arm's-length transaction." *Flood v. Lomira Board of Review,* 153 Wis. 2d 428, 436, [451 N.W.2d 422] (1990) (citation omitted). In the presence of an arm's-length sale it is error for an assessor to use other means to assess the value of the property.[7] *Darcel,* 137 Wis. 2d at

---

[5] The statute was amended effective January 1, 1992, but the portion quoted above has not changed. *See* 1991 Wis. Laws 39, secs. 1722 and 9449(30).

[6] Although *Steenberg* was decided after the Board's hearings, the portion of *Steenberg* quoted is merely a summary of law that was already applicable at the time of the hearings.

[7] This statement was made prior to the revision of sec. 70.32 (1) effective January 1, 1992. The statute now states:

In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property;

629. Section 70.32(1) also requires that the assessor value property consistent with The Property Assessment Manual For Wisconsin Assessors. The Property Assessment Manual For Wisconsin Assessors, Vol. I, Part 1, page 7–3 (Revised 12/87) states the conditions that must be satisfied for a sale to be considered a "market value" or "arm's-length" transaction: [listing the six conditions set forth above].

The first issue we address on review is the legal question of whether the taxpayer or the assessor bears the burden of proof on each of the six conditions set forth in the *Property Assessment Manual for Wisconsin Assessors* that must be satisfied to establish that a sale is a market value or arm's-length transaction. The circuit court concluded that Doneff had the burden of proving each condition necessary to show an arm's-length sale, and that Doneff had not met the burden of proving conditions two, three and four. Because these conditions were not satisfied, the circuit court did not discuss conditions five and six. The court of appeals, however, reached a different conclusion on the following conditions:

2. It presumes that both buyer and seller are knowledgeable about the real estate market

3. It presumes buyer and seller are knowledgeable about the uses, present and potential, of the property

recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

The issue of whether this language changes the approach an assessor must take is not before us.

Relying on an earlier court of appeals decision that had reached the same conclusion, *Martinsen v. Bd. of Review of Iron River,* 163 Wis. 2d 807, 472 N.W.2d 574 (Ct. App. 1991), the court of appeals concluded that each of these two conditions stated legal presumptions that are satisfied and must be accepted unless the city submits evidence that rebuts the presumption. Such a presumption, were it to exist, would shift the burden of proof from the taxpayer to the city—the taxpayer would not have to introduce evidence to show that the condition is met; rather the city would be required to introduce evidence to show that the condition is not met.

We conclude that the taxpayer retains the burden of proof on each condition set forth in the *Property Assessment Manual* that must be met to show that a sale was a market or arm's-length transaction. We have long held that a taxpayer challenging an assessment has the burden of proving that a sale was an arm's length transaction—"made under normal conditions so as to lead to the conclusion that the price paid was that which could ordinarily be obtained for the property." *State ex rel. Evansville Mercantile Ass'n v. City of Evansville,* 1 Wis. 2d 40, 44, 82 N.W.2d 899 (1957). *See also State ex rel. Geipel v. City of Milwaukee,* 68 Wis. 2d 726, 734, 229 N.W.2d 585 (1975); *State ex rel. Lincoln Fireproof Warehouse Co. v. Board of Review of Milwaukee,* 60 Wis. 2d 84, 208 N.W.2d 380 (1973); *State ex rel. Hein v. City of Barron,* 3 Wis. 2d 127, 130–31, 87 N.W.2d 785 (1958).

Conditions set forth in the *Property Assessment Manual* cannot be construed to change long-standing law and create a legal presumption that shifts the bur-

216

den of proof from a taxpayer to a city. Section 70.32, Stats., does provide that real property is to be valued "in the manner specified in the Wisconsin property assessment manual." However, sec. 73.03(2)(a), Stats., provides in relevant part, "The manual shall be amended by the department [of revenue] from time to time to reflect . . . *court decisions concerning assessment practices . . ..*" (Emphasis added.) This language indicates that the legislature intended that the *Property Assessment Manual* conform to, rather than establish, Wisconsin law. *Metro. Holding Co. v. Bd. of Review of Milwaukee,* 173 Wis. 2d 626, 633, 495 N.W.2d 314 (1993).

■ Our conclusion is consistent with the plain language of the *Property Assessment Manual,* vol 1, part 1, at 7–3, setting forth the six conditions and stating the conditions "are necessary for a sale to be considered a 'market value' transaction." This language does not indicate that an assessor, or a board reviewing an assessment, can assume any of the conditions exist. Rather, each condition must be shown to exist by proof submitted by the taxpayer. The court of appeals misread these conditions.

In *Martinsen,* 163 Wis. 2d at 815–16, the initial decision determining that the burden is on the city to rebut the presumptions in conditions two and three, the court of appeals relied on this court's decision in *Darcel v. Manitowoc Review Bd.,* 137 Wis. 2d 623, 629, 405 N.W.2d 344 (1987). However, in *Darcel* we merely quoted the conditions set forth in the *Property Assessment Manual.* We did not discuss whether conditions two and three are legal presumptions that shift the burden of proof to the city. *Darcel* does not support the *Martinsen* court's decision.

217

Because we conclude that the taxpayer retains the burden of proof on all conditions set forth in the *Property Assessment Manual* that must be satisfied to show a fair market, arm's-length sale, we reverse the decision of the court of appeals. We also overrule the court of appeals' earlier decision in *Martinsen* to the extent it holds that conditions two and three are legal presumptions that are deemed satisfied unless rebutted.

The second issue we address on this review is whether the Board properly sustained the assessor's valuation of the Doneff property. Because the circuit court took no new evidence when it conducted certiorari review of the Board's decision, this court applies the traditional common law certiorari standard of review. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment,* 131 Wis. 2d 101, 122, 388 N.W.2d 593 (1986). Depending on which facet of the Board's action is being challenged, common law certiorari review requires us to consider one or more of the following: "(1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *Smart v. Dane County Bd. of Adjustments,* 177 Wis. 2d 445, 452, 501 N.W.2d 782 (1993). Under common law certiorari review this court reviews the record of the Board. *State ex rel. Harris v. Annuity & Pension Bd., Employees' Retirement Sys. of Milwaukee,* 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979). There is a presumption in favor of rightful action by the Board. *Darcel,* 137 Wis. 2d at 626 (quoting

*State ex rel. Boostrom v. Bd. of Review,* 42 Wis. 2d 149, 155, 166 N.W.2d 184 (1969)).

Looking at the second portion of certiorari review, we conclude that the Board proceeded on a correct theory of law when it concluded that the sale price did not reflect fair market value. We base this conclusion on our analysis, above, of sec. 70.32, Stats., and the conditions set forth in the *Property Assessment Manual.* The taxpayer, Doneff, retained the burden of proof on each of the six conditions and he did not meet the burden of proof on conditions two—that both buyer and seller are knowledgeable about the real estate market; three—that buyer and seller are knowledgeable about the uses, present and potential, of the property; and four—that there are a willing buyer and a willing seller, with neither party compelled to act.

Ramminger, Doneff's tax consultant, testified before the Board that he had spoken with Shirley Erdman's attorney, William Dean, who indicated that Shirley Erdman was not forced to sell the property but had made the decision to sell because the real estate market was soft, the building had been mostly vacant for several years, and the building needed major improvements. Neither Erdman nor Dean testified at the hearing. As the circuit court concluded, Ramminger's hearsay testimony was not sufficient to meet the burden of proof on the seller's knowledge and willingness to sell. *Cf. Geipel,* 68 Wis. 2d at 735 (seller's testimony that he had tried to sell the property for several years through several realtors helped establish that the sale reflected fair market value).

The Board properly relied on Gardner's conclusion that the surrounding circumstances indicated the sale was not at arm's-length. Assessor Gardner's obligation to determine whether the sale was at arm's-length

required that he investigate the circumstances surrounding the sale. *Darcel,* 137 Wis. 2d at 629. Gardner stated that he had spoken to Erdman and Dean, both of whom said that the sale price was the best they could obtain. Nonetheless, Gardner concluded that Bud Erdman had overvalued the property and when the property thereafter failed to sell, Shirley Erdman probably came to see the property as a problem and was willing to take any offer for it. The Board also properly added its own analysis of the surrounding circumstances, noting that the sale was private, the property was not listed and a real estate agent had not been involved.

The Board properly relied on the alternative approaches the assessor used to determine the property's fair market value. Because the sale was not at arm's-length and therefore not reflective of fair market value, the assessor was entitled to use other means to assess the value of the property. *See Darcel* 137 Wis. 2d at 629. In the absence of an arm's-length sale the assessor must base the assessment on sales of reasonably comparable property. *Rosen v. City of Milwaukee,* 72 Wis. 2d 653, 662, 242 N.W.2d 681 (1976) (quoting *State ex rel. Markarian v. Cudahy,* 45 Wis. 2d 683, 686, 173 N.W.2d 627 (1970)). In the absence of such a sale, the assessor may consider "all the factors collectively which have a bearing on the value of the property", including costs, depreciation, location and occupancy. *Id.* at 662–63 (quoting *Cudahy,* 45 Wis. 2d at 686). This approach is consistent with that set forth in the *Property Assessment Manual,* to which sec. 70.32 refers, at 7–3.

As Board member Nenonen stated, the Board was provided with multiple methods of arriving at the assessed valuation. The Board heard testimony that assessor Gardner arrived at the assessed value of $345,500, $12.03 per square foot, by utilizing a traditional cost approach. In determining the final figure, he legitimately considered factors bearing on the property's value including depreciation and structural defects such as energy inefficiency. Gardner also compared the Doneff property to sales of four reasonably comparable properties, two other car dealerships in the city of Two Rivers, a car dealership in a nearby town, and a boat sales facility in a nearby town. He began with the actual sales prices of the comparable properties and then adjusted them to reflect differences between the Doneff property and the comparables. The values he assigned to the Doneff property based on these comparisons ranged from $279,496 to $496,282—a range of $12.20 to $17.28 per square foot, all of which are higher than the assessed value of $12.03 per square foot. Thus, the analysis based on sales of comparable properties confirmed that the assessed value based on the cost approach reflected a conservative view of fair market value. Ramminger, Doneff's consultant, considered only one of the comparable properties and reached a figure for the Doneff property quite close to the actual sale price. The valuation techniques employed by the assessor are those required by Wisconsin law. The board was justified in relying on the assessor's valuation, particularly because he used a second approach to check his first and relied on the very lowest valuation.

*By the Court.*—Decision reversed.